JAMES WELCH *vs.* ERNEST FLORY, administrator.

Middlesex. November 12, 20, 1935. — March 31, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Executor and Administrator*, Distribution.

A judge of probate, who heard a petition, by a next of kin entitled to one fourth of an intestate estate in distribution, for revocation of a decree for distribution which had omitted him as a distributee although he had been named in the administrator's petition for appointment, and which had been fully performed, while finding that the administrator had acted honestly and in good faith and not expressly finding that he had been negligent in searching for the petitioner, found facts

showing that the administrator had been but mildly active, if not slothful, in such search, and that more diligence on his part might have located the petitioner; and ordered that the decree for distribution should be amended to recognize that the petitioner was entitled to a one fourth interest, but that the administrator should not be rendered personally liable thereby. Upon appeal by the petitioner, it was *held*, that honesty and good faith of the administrator were not enough to protect him, and that the decree must be reversed and the administrator directed to make payment to the petitioner, with rights over against the other distributees.

PETITION, filed in the Probate Court for the county of Middlesex on March 19, 1932, for revocation of a decree for distribution of assets of the estate of Agnes Welch, late of Lowell, deceased, intestate.

The petition was heard by *Beane*, J., by whose order the decree described in the opinion was entered. The petitioner appealed from the decree, and upon request by him, the judge filed a report of material facts.

*N. H. Kolodny*, for the petitioner, submitted a brief.

*A. B. Carey*, for the respondent.

RUGG, C.J. This case involves a decree for distribution of the estate of Agnes Welch, who died intestate in Lowell in 1929. The respondent, the husband of a niece of the intestate, was appointed upon his own petition as administrator of the estate of the intestate in September, 1929; in that petition he stated that she left no husband and as her only heirs at law and next of kin James Welch, hereafter called the petitioner, described as her brother, and other persons described as nephews, nieces, grandnephews and grandnieces; the residence of the petitioner was stated to be Boston, Massachusetts. The first account of the respondent as administrator was allowed, showing a considerable balance entirely in cash. The respondent then filed the petition for distribution of such balance, alleging that the persons entitled thereto were named nephews, nieces, grandnephews and grandnieces, and making no mention of the petitioner. By decree of October 17, 1930, and upon warrant dated November 6, 1930, distribution of such balance was ordered in stated sums among the kindred named in the petition for distribution; the petitioner was not included in that decree

or in the warrant. Report of payment of these sums was rendered to the Probate Court by the respondent and allowed by decree of February 27, 1931. In March, 1932, the petitioner filed a petition for revocation of the decree for distribution of October 17, 1930. That petition at first was dismissed but later, on November 28, 1934, a decree was entered of this tenor: "That said decree of October 17, A.D. 1930, be reaffirmed except so far as it finds that the said twenty-seven distributees therein named are the persons entitled to the balance of said estate; and it is decreed that said petitioner is entitled to one-fourth of said balance. But it appearing that all of said balance having been distributed by said administrator in good faith under authority and direction of said decree and order of October 17, A.D. 1930, this decree shall not require the administrator to take further action nor impose upon him any liability, but it shall take effect only to correct the error of said former decree and order and to establish the rights of the petitioner to his distributive share of said estate of said Agnes Welch as against the twenty-seven distributees to whom payment has been made and to give to said petitioner and to the administrator such rights as against said distributees as arise from the correction of the error of the decree of October 17, A.D. 1930." The petitioner appealed from that decree. The evidence is not reported. The trial judge at the request of the petitioner made report of the material facts found by him. In substance they are as follows: Shortly before the death of the intestate the respondent was appointed conservator of her estate. At that time and at the time of his appointment as administrator he was informed by his wife that she had an uncle, meaning James Welch, the petitioner. He was then about seventy-two years old and was living at 115 Holton Street, in the Brighton district of Boston, where he had been living for about fifteen years past. During that time he voted and paid taxes in Boston. For the purpose of notifying him of his sister's death in order that he might attend her funeral, the respondent made inquiry of two or three of the next of kin living in Lynn and was informed by some

of them that a man named Comeau living in Lynn would probably know about the petitioner, James Welch. He asked them to see Comeau and make inquiry as to the whereabouts of the petitioner, and afterwards the wife of the respondent informed him that one of the next of kin had telephoned her saying that they had seen Comeau and that Comeau had told them that he did not know where the petitioner was. The respondent later went to the city hall at Malden but could find no record of James Welch, and he also wrote to two of the next of kin in Nova Scotia but was unable to get any information from them regarding James Welch. The respondent did not make any examination of the city records in Boston. Comeau, as a matter of fact, had called upon the petitioner at various times and did know where he lived, but the respondent never personally saw Comeau or communicated with him directly. The respondent testified that he believed the petitioner had died without issue, although he was not so informed by anyone who had actual knowledge of his death. The trial judge found that the petitioner was entitled to $3,713.35, which was one fourth of the balance of the estate of the intestate, and that the respondent as administrator in bringing his petition for distribution and in making distribution under order of the court acted honestly and in good faith, but that by a more diligent search he might have located James Welch or have ascertained that he was still living.

The respondent has not appealed from the decree of November 28, 1934. There was a manifest mistake in the original decree of distribution, which upon the facts now disclosed ought to be corrected. The decree of November 28, 1934, in form and substance conforms to established practice, where the administrator is without fault and has performed his duty and no further circumstances are disclosed. *Harris* v. *Starkey*, 176 Mass. 445. *Loring* v. *Steineman*, 1 Met. 204. *Pierce* v. *Prescott*, 128 Mass. 140. *Knowles* v. *Perkins*, 274 Mass. 27, 33. G. L. (Ter. Ed.) c. 206, § 22.

The petitioner contends that upon the facts recited in the findings the respondent "was guilty of negligence in connection with the making of the original order of distribution,

such as should deprive him of the right to rely upon it for his protection, and should require the court to make a new decree as if the former decree had not been entered." *Cleaveland* v. *Draper*, 194 Mass. 118, 122, 123. Although in that decision it was held that the administrator had not been guilty of such negligence, the principle was recognized that his conduct in respect to the entry of the decree of distribution might be of such nature as to deprive him of its shelter. The general rule is that those acting in a trust capacity must exercise not only good faith but also sound judgment in the performance of their duties. They must use that degree of intelligence and diligence which a man of average ability and ordinary prudence under such responsibility would exercise in like circumstances. That rule finds its most frequent illustration in the investment of trust funds and the management of trust estates. *Kimball* v. *Whitney*, 233 Mass. 321. *Springfield Safe Deposit & Trust Co.* v. *First Unitarian Society*, 293 Mass. 480, 485. The rule is not confined in its operation to those cases, but, as shown by *Cleaveland* v. *Draper*, 194 Mass. 118, extends to an administrator in respect to his conduct in making distribution of an intestate estate in conformity to a decree of court.

There is no express finding in the case at bar that the respondent was negligent. There is the finding that the respondent acted honestly and in good faith. That, however, is not enough. Not infrequently, trustees whose conduct has met that standard have been compelled to make good losses to the trust fund solely because of failure to exercise sound judgment in investments. There is no finding in terms that the respondent conformed to the general rule of conduct just stated. It is found, however, that by exercising more diligence he might have located the petitioner, or ascertained that he was living. The facts found and already narrated show that the respondent was mildly active, if not actually slothful, in his attempt to locate the petitioner. He was described in the respondent's petition for administration as a brother of the intestate, resident in Boston. Of course that description did not establish the fact. *Hopkins* v. *Treasurer & Receiver General*, 276 Mass.

502. If that statement had come to the attention of the judge, it can hardly be thought that the decree of distribution would have been entered on October 17, 1930. See *Withington* v. *Fidelity & Casualty Co.* 237 Mass. 73, 78. The respondent did not personally see or communicate with, or even write to, Comeau in Lynn, who in fact knew about the petitioner, but, instead of making genuine investigation, the respondent accepted an unreliable hearsay report that Comeau did not know the residence of the petitioner. The respondent did not examine the city records of Boston. He did not seek information from that source by letters of inquiry. He did not, so far as appears, write a letter to the petitioner addressed to Boston or even examine Boston directories. He did not advertise for him in Boston newspapers. He did not solicit knowledge of him from the police department of Boston, or ask its assistance to find him. The diligence of the respondent falls far short of that disclosed by the administrator in *Cleaveland* v. *Draper*, 194 Mass. 118. The respondent did not bring the situation to the attention of the judge. The respondent occupied a position of trust with respect to the petitioner. That position required the putting forth of every reasonable effort to discover him. Instead of making that industrious and persevering search, he took the responsibility of representing to the court in substance and effect, by presenting his petition for distribution, that the petitioner was not in existence at the time of the death of the intestate and hence not entitled to share in her estate. That was a subject about which he had almost no reliable information. See *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403; *Bates* v. *Cashman*, 230 Mass. 167; *Howard* v. *Barnstable County National Bank of Hyannis*, 291 Mass. 131, 136.

The findings of fact by the trial judge must be accepted as true. The evidence is not reported. The decree of November 28, 1934, is within the scope of the petition. The entry of that decree imports the drawing of all rational inferences from the facts found, so far as permissible, to support that result. *Peabody* v. *Dymsza*, 280 Mass. 341. *Seager* v. *Dauphinee*, 284 Mass. 96, 98. *Karas* v. *Karas*, 288 Mass.

460, 462. But, for the reasons already stated, we are of opinion that the facts found do not warrant the conclusion that the respondent put forth that intelligence and diligence to find the petitioner required of him by his trust obligation. It follows that the decree of November 28, 1934, from which this appeal was taken, is reversed and a new decree is to be entered with substantially the same recitals, but, in place of the final sentence, order is to be made in substance correcting the decree of distribution to conform to the facts now ascertained, directing the respondent to make payment to the petitioner of his distributive share of the estate, establishing the rights of the respondent as administrator to collect the amount of overpayment made to each of the twenty-seven distributees to whom payment has been made, and giving to the respondent as administrator such rights as against said distributees as arise from the correction of the error in the decree of October 17, 1930. The details of the decree may be framed in the Probate Court.

*Ordered accordingly.*