National Academy of Sciences *vs.* Cambridge Trust Company, *trustee.*

Middlesex.     March 14, 1975. — May 30, 1975.

Present: Hale, C.J., Rose, & Armstrong, JJ.

*Fiduciary. Fraud. Trust,* Trustee's accounts, Negligence of trustee. *Probate Court,* Accounts, Revocation of decree, Counsel fees.

Where a testator provided that certain property be held in trust by a bank to pay the net income to his widow until her death or remarriage, the trust property then to be transferred to another, and the trustee bank continued to pay the income to the widow after her remarriage, the bank's failure to attempt to ascertain whether or not she had remarried and its continuing representation in its annual probate accounts to the effect that she had not remarried, although made in good faith, constituted fraud by the trustee and warranted the reopening of the accounts. [317-319]

On a petition brought in a Probate Court seeking revocation of a series of decrees allowing accounts of a trustee and restoration of certain amounts erroneously distributed under a trust, there was no error in the judge's surcharging the trustee and ordering it to file a final account reflecting the surcharge prior to acting upon accounts whose allowance was revoked where the fact that the petitioner was precluded from objecting to items other than the erroneous distributions amounted to an allowance of the accounts as amended and where the parties had agreed to a hearing on all the prayers of the petition. [319]

A probate judge did not abuse his discretion in ordering a trustee which had erroneously distributed payments under a trust to pay counsel fees and expenses arising from litigation against it seeking restoration of the payments to the trust even though the trustee had not profited from the erroneous disbursements. [319-320]

The Probate Court erred in allowing a trustee to charge a trust estate for legal costs of a suit to recover funds which had been wrongfully disbursed as a result of the trustee's negligent administration of the trust. [320]

PETITION filed in the Probate Court for the county of Middlesex on August 11, 1971.

The case was heard by *Freedman, J.*

*Winslow A. Robbins (Stanley V. Ragalevsky* with him) for the respondent trustee.

*Richard D. Leggat (William H. Thedinga* with him) for the petitioner.

ROSE, J.    This is a petition brought in a Probate Court by the National Academy of Sciences (the academy) on August 11, 1971, whereby the academy seeks (1) revocation of a series of decrees allowing the twelfth through thirty-third accounts of the Cambridge Trust Company (the bank) as trustee under the will of Leonard T. Troland, (2) deletion from those accounts of certain entries reflecting distributions to a beneficiary of the trust, (3) restoration by the bank to the trust of the amounts of those distributions, with interest, (4) preparation by the bank of a final account reflecting the sums so restored and covering transactions subsequent to the dates of the accounts theretofore filed, (5) appointment of the academy as successor trustee and (6) payment by the bank to the academy's counsel of their fees and expenses. The bank appeals from a decree granting all the prayers in the petition except the one seeking the academy's appointment as trustee. The academy appeals from paragraph 4 of the decree, whereby the bank was permitted to charge the trust for amounts paid by it for legal services and disbursements in connection with an earlier proceeding in the Superior Court (the Superior Court suit) to be described later.

The facts do not appear to be in dispute. Those relevant to our decision may be summarized as follows.

Leonard T. Troland died in 1932 and was survived by his widow, Florence R. Troland. His will provided that all his real property and intangible personal property be held

in trust by the bank, with the net income thereof payable
to his widow during her lifetime or (with exceptions not
here material) until she should remarry. Upon her death or
remarriage, the trust property was to be transferred to the
National Research Council, an agency of the academy,[1]
to be held in trust for certain scientific purposes.

The will was allowed, and the trust was established in ac-
cordance with its terms. The bank paid the net income of
the trust to the widow, as well as the Massachusetts in-
come taxes thereon, until December, 1967, when she died.
The bank then learned for the first time that the widow
had remarried in 1945 and that all such payments after
that date had therefore been improper. The total of the
erroneous payments, according to the decree, was $114,-
314.18,[2] most of which was shown in the bank's twelfth
through thirty-third accounts, covering the period from
October 1, 1944, to September 30, 1966. The academy, hav-
ing also been unaware of the widow's remarriage, never
challenged those accounts, and they were duly allowed. The
balance of the erroneous payments was shown in the bank's
thirty-fourth and thirty-fifth accounts, covering the period
ending September 30, 1968, which have not yet been pre-
sented for allowance.

The widow and her second husband, one Flynn, were
married in Florida and lived together in New Jersey until
her death on December 25, 1967. Pursuant to instructions
given by her to the bank in 1944, all income checks were
thereafter mailed to her at one or the other of two specified
Boston addresses in care of one Custance, the widow's

---

[1] The academy brought this petition "in behalf of the National Re-
search Council," and no question has been raised as to its right to do
so. In the interests of simplicity we treat the two organizations as
identical.

[2] The bank does not question the inclusion in this total of the income
taxes which it paid on the amounts distributed to the widow. But for
the bank's error, the amounts so paid would have been devoted to what
appears to be a charitable purpose and exempt from income taxation
under G. L. c. 62, § 8(k), as in effect prior to St. 1971, c. 555, § 5.

brother-in-law through marriage to her sister. All checks were made payable to "Florence R. Troland," were forwarded by Custance to the widow, were endorsed by her (as "Florence R. Troland") in blank and returned to Custance, and were then deposited by him in accounts standing in his name in other banks. Custance from time to time withdrew funds from those accounts which he either spent or forwarded to the widow. The judge found that the bank "made no effort at all during its administration of the trust to ascertain if Florence R. Troland had remarried even to the extent of annually requesting a statement or certificate from her to that effect" but instead "acted primarily in a ministerial manner . . . ."

On March 13, 1968, the bank brought the Superior Court suit referred to above, which was a bill in equity against Custance and others seeking to recover the amounts improperly paid to the widow. The bank recovered $41,416.64 in that litigation.

1. The bank's principal contention in its appeal from the decree is that the probate judge exceeded his statutory authority in revoking the earlier decrees. The bank correctly asserts that where, as here, there was no procedural infirmity in the allowance of its accounts, mere negligence in the administration of the trust prior to the allowance thereof, though so gross as to constitute a flagrant breach of its fiduciary duty, is not enough to warrant reopening those accounts, and that such accounts may not "be impeached except for fraud or manifest error." G. L. c. 206, § 24. *O'Brien* v. *Dwight*, 363 Mass. 256, 282-289 (1973). However, we cannot agree with the bank's assertion that there has been no showing of "fraud or manifest error" in the present case.

The bank identified the trust in each of the challenged accounts as one "for the benefit of Florence R. Troland" or "for the benefit of Florence R. Troland and others." Schedule E of each account reflected monthly payments of $225 or more to "Florence R. Troland." In the first four of the accounts at issue those payments were grouped under the

heading "Distributions to Beneficiary."[3] In our view this constituted a continuing representation by the bank to the academy and to the court that the widow remained "Florence R. Troland" despite her (then unknown) remarriage to Flynn, and that she remained the sole income beneficiary of the trust. Compare *Welch* v. *Florey,* 294 Mass. 138, 143 (1936). Those representations, though doubtless made in complete good faith, were contrary to fact. They were made as of the bank's own knowledge when the bank had no such knowledge and had made absolutely no effort to obtain it.

The word "fraud" in common parlance usually connotes some form of intentional wrongdoing. We emphasize there is no suggestion of any such conduct on the part of the bank. However, it is well settled that a statement which is contrary to a fact susceptible of precise and accurate knowledge, if made as of one's own knowledge but without such knowledge, may be treated as technically fraudulent, despite an honest belief in the truth of the statement by the person making it. *Powell* v. *Rasmussen,* 355 Mass. 117, 119 (1969), and cases cited. The bank's conduct fits that description. The will contained no exculpatory clause protecting the bank from liability for such conduct or for any other breach of its fiduciary duties. While we have discovered no Massachusetts precedent for permitting an account previously allowed to be reopened by reason of negligent misrepresentations therein, the Supreme Judicial Court has intimated that there may be cases in which it is proper to do so. See *Greene* v. *Springfield Safe Dep. & Trust Co.* 295 Mass. 148, 152 (1936). We conclude that in the circumstances of this case the representations by the

---

[3] Beginning with its sixteenth account the bank adopted a new format in which all payments under Schedule E, including those to "Florence R. Troland," appeared in chronological order. From the absence of any explanation in those accounts accompanying the entries reflecting payments to her (as contrasted with those reflecting other payments), and from the other factors noted in the text, it must have been obvious to anyone reading the accounts that the payments to "Florence R. Troland" were made to her in her supposed capacity as beneficiary.

bank as to the status of the widow, however honestly made, warranted the reopening of the accounts.[4]

That neither the academy in its petition nor the judge in his report of material facts explicitly characterized the bank's conduct as fraudulent is of no consequence, as any such characterization is merely a conclusion of law to be drawn from the facts alleged and found. See *DeVincent Ford Sales, Inc.* v. *First Mass. Corp.* 336 Mass. 448, 452 (1957). Nor, in view of the representation in the bank's accounts that no condition had occurred which would terminate the widow's beneficial interest or the bank's own trusteeship, are we persuaded by the bank's contention that the academy was itself guilty of a breach of trust and therefore estopped to assert its claim.

2. The bank next contends that even if revocation of the earlier decrees were warranted, the judge erred in surcharging the bank and in ordering it to file a final account reflecting the surcharge. The complaint appears to be that the judge should not have taken those steps before acting upon accounts whose allowance was revoked as well as subsequent accounts not yet presented for allowance, though the bank cites no authority in support of its contention. In any event we fail to see how any such alleged procedural error could have harmed the bank in any way once the earlier decrees had been revoked. Moreover, the present decree expressly precludes the academy from objecting to any items in the twelfth through thirty-fifth accounts other than those reflecting the payments at issue — which is tantamount to the allowance of those accounts as amended in accordance with the decree. Finally, the decree recites that "the parties . . . agreed in open Court to a hearing on all the prayers of . . . [the] petition," and the bank has not challenged that statement.

3. The bank's remaining contention on its appeal — that the judge was not warranted in ordering the bank to pay

---

[4] We need not, and do not, decide whether we would reach the same conclusion if the bank had made reasonable efforts to ascertain the widow's status and those efforts had been unsuccessful through no fault of the bank.

the academy's counsel fees and expenses arising from this litigation — is answered by the terms of G. L. c. 215, § 45, which permits a probate judge in his discretion to award such sums to either party "to be paid by the other, *or* . . . to be paid out of the estate" (emphasis supplied). While such payments will ordinarily be ordered from a trustee's personal funds only where the trustee has profited from his breach of trust (*New England Trust Co.* v. *Triggs,* 339 Mass. 453 [1959]), the probate judge still has broad discretion in that regard, and we see no reason to revise his action here (compare *Spilios* v. *Papps,* 292 Mass. 145, 147-148 [1935]).

4. The sole issue raised by the academy's appeal is the propriety of paragraph 4 of the decree, whereby the bank was permitted to charge the trust estate for legal services and disbursements involved in the Superior Court suit. To be sure, that suit was brought for the purpose of recovering funds wrongfully diverted from the trust estate, and there is no suggestion that the suit was not ably and diligently conducted. But no such suit would have been necessary if the bank had not caused that wrongful diversion of funds by its own neglect in the administration of the trust. As the Superior Court suit "was occasioned in great measure by . . . [the bank's] own fault, [it] . . . should not be allowed to charge any part of the expenses to the trust estate . . .." *Blake* v. *Pegram,* 109 Mass. 541, 558 (1872). See also Loring, Trustee's Handbook, § 65, p. 175 (Farr Rev. 1962). Compare *State Street Trust Co.* v. *Walker,* 259 Mass. 578, 583 (1927).

5. The decree is to be modified by striking paragraph 4 thereof. As so modified the decree is affirmed.

*So ordered.*