NATIONAL ACADEMY OF SCIENCES *vs.* CAMBRIDGE TRUST COMPANY, trustee.

Middlesex.    January 7, 1976. — May 13, 1976.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Fiduciary. Fraud. Trust,* Trustee's accounts, Negligence of trustee. *Probate Court,* Accounts, Revocation of decree, Counsel fees.

Where a testator provided that certain property be held in trust by a bank to pay the net income to his widow until her death or remar-

riage, the trust property then to be transferred to another, and the trustee bank continued to pay the income to the widow after her remarriage, the bank's failure to attempt to ascertain whether or not she had remarried and its continuing representation in its annual probate accounts to the effect that she had not remarried, although made in good faith, constituted fraud within the meaning of G. L. c. 206, § 24, and warranted the reopening of the accounts. [308-309] WILKINS, J., dissenting.

A trustee which had erroneously distributed payments under a trust was liable to the proper beneficiary to make restitution of the amounts disbursed. [310-311]

A probate judge did not abuse his discretion in ordering a trustee which had erroneously distributed payments under a trust to pay counsel fees and costs arising from litigation seeking restoration of the payments even though the trustee had not profited from the erroneous disbursements. [311-312]

The Probate Court erred in allowing a trustee to charge a trust estate for legal costs of a suit to recover funds which had been wrongfully disbursed as a result of the trustee's negligent administration of the trust. [312]

PETITION filed in the Probate Court for the county of Middlesex on August 11, 1971.

The case was heard by *Freedman,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Winslow A. Robbins* (*Stanley V. Ragalevsky* with him) for Cambridge Trust Company, trustee.

*Richard D. Leggat* (*Janis M. Berry & William H. Thedinga* with him) for the National Academy of Sciences.

*Alex J. McFarland & Howland S. Warren* for The First National Bank of Boston, amicus curiae, submitted a brief.

*William Minot* for State Street Bank and Trust Company, amicus curiae, submitted a brief.

*John A. Perkins* for New England Merchants National Bank, amicus curiae, submitted a brief.

*John E. Rogerson & John C. Thomson* for Boston Safe Deposit and Trust Company, amicus curiae, submitted a brief.

REARDON, J.   This matter is before us for further appellate review, the Appeals Court having promulgated an opinion.

The facts which give rise to the case are essentially as follows. Leonard T. Troland died a resident of Cambridge

in 1932 survived by his widow, Florence R. Troland. By his will executed in April, 1931, he left all of his real and personal property to be held in trust by the Cambridge Trust Company (bank) with the net income of the trust, after expenses, "to be paid to, or deposited to the account of [his wife], Florence R. Troland" during her lifetime so long as she remained unmarried. He further provided that "[k]nowing my wife, Florence's, generosity and unselfishness as I do, I wish to record it as my intention that she should not devote any major portion of her income under the provisions of this will, to the support or for the benefit of people other than herself. It is particularly contrary to my will that any part of the principal or income of my estate should revert to members of my wife's family, other than herself, and I instruct the trustees to bear this point definitely in mind in making decisions under any of the options of this will." The testator went on to provide in part that on his wife's death or second marriage the bank would transfer the trusteeship to The National Research Council of Washington, D. C., which the petition alleged to be an agency of the National Academy of Sciences (academy), to constitute a trust to be known as the Troland Foundation for Research in Psychophysics. He directed that income be accumulated and added to principal until sufficient to produce an annual income of $50,000 or the 1931 purchasing power equivalent of that amount of money, at which time the income was to be applied by the academy within certain specific guidelines set out in the will. The testator further provided instructions to the academy as successor trustee concerning his wife's support should she be widowed again after a second marriage or should her second husband fail to support her.

The will was allowed, the trust was established as provided by the testator, and the bank paid the income thereof to the widow until her death in 1967. During the period from 1932 to 1945 the widow provided eighteen different mailing addresses for income checks to be transmitted to her by the bank. On February 13, 1945, she married Edward D. Flynn in West Palm Beach, Florida, and failed to

advise the bank of her remarriage. Following her remarriage she lived in Perth Amboy, New Jersey. Commencing on April 14, 1944, she directed the bank to forward all her monthly checks to her in care of Kenneth D. Custance, her brother-in-law through marriage to her sister. Over the years these checks were forwarded to two Boston addresses and were made payable to "Florence R. Troland." Custance in turn forwarded the checks to Florence R. Flynn who indorsed them in blank "Florence R. Troland" and returned them to Custance who also indorsed them prior to depositing them in bank accounts in his name maintained at the State Street Bank and Trust Company in Boston and the National Bank of Wareham, Massachusetts. After Florence R. Flynn's death on December 25, 1967, the bank for the first time learned of her remarriage. Throughout her second marriage Florence R. Flynn lived with her husband who was able to provide support for her and who, although aware that she was receiving payments from the trust, was ignorant of the limitation on her rights to receive such payments. In March, 1968, the bank brought a suit in equity in the Superior Court, Suffolk County, against Custance, the National Bank of Wareham, the State Street Bank and Trust Company, and Edward D. Flynn for recovery of amounts "represented by checks made payable to Florence R. Troland and collected by Florence R. Flynn subsequent to the date of her marriage." In this litigation the bank recovered $41,416.64 from which it paid legal fees and disbursements of $14,475.49. The total of all checks collected by Florence R. Flynn following her marriage in 1945 up to the date of her death is $106,013.41. The twelfth through thirty-third accounts of the bank covering that period between her remarriage and October 8, 1966, were presented to the Probate Court for Middlesex County in separate proceedings and allowed. The academy had formal notice prior to the presentation of the twelfth through fourteenth accounts and the eighteenth through thirty-third accounts, and with respect to the fifteenth through seventeenth accounts assented in writing to their allowance. The academy, unaware of the widow's

remarriage, did not challenge any of the accounts and they were duly allowed.

The petition brought in the Probate Court by the academy seeks revocation of the seven decrees allowing the twelfth through thirty-third accounts of the bank, the excision from those accounts of "all entries purporting to evidence distributions to or for the benefit of 'Florence R. Troland' . . . subsequent to February 13, 1945," the restoration by the bank to the trust of the amounts of those distributions with interest at the rate of six per cent, a final account reflecting the repayments and adjustments, appointment of the academy as trustee, and payment by the bank of the costs and expenses of the academy's counsel.

Following hearing, a judge of the Probate Court revoked the seven decrees allowing the twelfth through thirty-third accounts, ordered restoration to the trust of $114,314.18, representing amounts erroneously distributed to Florence R. Flynn plus Massachusetts income taxes paid on those amounts from trust funds, together with interest thereon in the sum of $104,847.17 through March 31, 1973, and interest thereafter at the rate of six per cent per annum to the date of restoration in full. The probate judge allowed as a credit against the amount of interest payable $41,416.64, the amount recovered by the bank from Custance, and further allowed the bank to show as an appropriate charge against the trust corpus the amount of $14,475.49 paid to counsel in connection with the recovery of those funds. The bank was ordered to pay $15,000 to the academy's counsel for legal services and expenses incurred in behalf of the academy in the proceedings in the Probate Court; and finally the bank was ordered to prepare a final account reflecting the adjustments ordered by the judge and the transfer of the restored principal and accumulated income to the academy. The Appeals Court affirmed the decree with the sole exception of striking therefrom that paragraph wherein the bank was permitted to charge the estate for legal services and disbursements involved in the recovery against Custance. *National Academy of Sciences* v. *Cambridge Trust Co.,* 3 Mass. App. Ct. 314, 320 (1975).

The issues before us have to do with the power of the Probate Court judge to order the revocation of the decrees allowing the twelfth through thirty-third accounts, and the propriety of charging the bank for the amounts erroneously disbursed, as well as the disposition of the several claims for counsel fees, interest and disbursements.

The bank recited in the heading of each of the challenged accounts that the trust was "for the benefit of Florence R. Troland," and stated in schedule E of each account (in the first four accounts specifically as "Distributions to Beneficiary") that monthly payments of $225 or more were made to "Florence R. Troland." The Appeals Court held that these recitals and statements "constituted a continuing representation by the bank to the academy and to the court that the widow remained 'Florence R. Troland' despite her (then unknown) remarriage to Flynn, and that she remained the sole income beneficiary of the trust." 3 Mass. App. Ct. at 318 (1975). The court further held that those representations were technically fraudulent in that "[t]hey were made as of the bank's own knowledge when the bank had no such knowledge and had made absolutely no effort to obtain it." *Id.* at 318. With these views we find ourselves substantially in accord.

The doctrine of constructive or technical fraud in this Commonwealth is of venerable origin. As we pointed out in *Powell* v. *Rasmussen,* 355 Mass. 117, 118-119 (1969), the doctrine here was developed in two opinions by Chief Justice Shaw. In *Hazard* v. *Irwin,* 18 Pick. 95, 109 (1836), it was defined in the following terms: "[W]here the subject matter is one of fact, in respect to which a person can have precise and accurate knowledge, and . . . he speaks as of his own knowledge, and has no such knowledge, his affirmation is essentially false." This rule was reiterated by Chief Justice Shaw in *Page* v. *Bent,* 2 Met. 371, 374 (1841): "The principle is well settled, that if a person make a representation of a fact, as of his own knowledge, in relation to a subject matter susceptible of knowledge, and such representation is not true; if the party to whom it is made relies and acts upon it, as true, and sustains

damage by it, it is fraud and deceit, for which the party making it is responsible." In this case the marital status of Mrs. Troland/Flynn was a fact susceptible of precise knowledge, the bank made representations concerning this fact of its own knowledge when it had no such knowledge, and the academy to whom the representations were made relied on them to its detriment. While this standard of fraud in law has been developed primarily in the context of actions seeking rescission of contracts and of tort actions for deceit, we have indicated in past decisions that an analogous standard might be applicable to misrepresentations in the accounts of fiduciaries. See *Greene* v. *Springfield Safe Deposit & Trust Co.,* 295 Mass. 148, 152 (1936); *Welch* v. *Flory,* 294 Mass. 138, 142-143 (1936); *Brigham* v. *Morgan,* 185 Mass. 27, 39-40 (1904). We hold today that "fraud" as used in G. L. c. 206, § 24, contemplates this standard of constructive fraud at least to the extent that the fiduciary has made no reasonable efforts to ascertain the true state of the facts it has misrepresented in the accounts. This rule is not a strict liability standard, nor does it make a trustee an insurer against the active fraud of all parties dealing with the trust. Entries in the accounts honestly made, after reasonable efforts to determine the truth or falsity of the representations therein have failed through no fault of the trustee, will not be deemed fraudulent or provide grounds for reopening otherwise properly allowed accounts. However, in the instant case the probate judge found that the bank, through the twenty-two years covered by the disputed accounts, exerted "no effort at all ... to ascertain if Florence R. Troland had remarried even to the extent of annually requesting a statement or certificate from her to that effect" and that "in administering the trust acted primarily in a ministerial manner and in disregard of its duties as a trustee to protect the terms of the trust." In these circumstances we have little trouble in concluding that the bank's representations as to the marital status of the testator's widow fully justified the reopening of the accounts.

Cases relied on by the bank in which this court refused

to allow previously allowed accounts to be reopened are distinguishable in that either they did not involve representations of fact susceptible of precise knowledge but rather questions of judgment and discretion as to matters fully and frankly disclosed in the accounts, see, e.g., *Jackson* v. *United States Trust Co.* 361 Mass. 333, 336-338 (1972) (changes in trust investments); *Holyoke Nat'l Bank* v. *Wilson,* 350 Mass. 223, 227 (1966) (discretionary payments out of principal to income beneficiary); *Old Colony Trust Co.* v. *Mabbett,* 334 Mass. 412, 415-417 (1956) (purchase, retention, and sale of certain bonds); *Reynolds* v. *Remick,* 333 Mass. 1, 8-10 (1955) (administration of the trust through corporate agencies and transfers of stock and trust assets related thereto); *Greene* v. *Springfield Safe Deposit & Trust Co., supra* at 152 (propriety of certain investments); or that the alleged wrongful acts or mistakes of the trustee were discernible from an examination of the accounts, the trust documents and the law. See, e.g., *Jackson* v. *United States Trust Co., supra* at 340-341 (manner of payment of inheritance taxes); *Taylor* v. *Worcester County Nat'l Bank,* 360 Mass. 687, 689-691 (1971) (manner of valuing trust assets [at book value] in accord with accepted accounting principles); *Old Colony Trust Co.* v. *Bravo,* 359 Mass. 34, 38 (1971) (manner of payment of taxes); *Porotto* v. *Fiduciary Trust Co.,* 321 Mass. 638, 643-644 (1947) (distributions to persons whose interests violated rule against perpetuities). We adhere to our decisions that it is the duty of beneficiaries "to study the account presented to the Probate Court by the trustee, and to make their objections at the hearing." *Greene* v. *Springfield Safe Deposit & Trust Co., supra* at 154. Accord, *Taylor* v. *Worcester County Nat'l Bank, supra* at 691; *Burlingham* v. *Worcester,* 351 Mass. 198, 202 (1966). However, in this case the fact of the widow's remarriage was not discernible from the most scrupulous examination of the accounts, the trust documents and the relevant law, and the bank cannot avoid responsibility here for its misrepresentations by alleging a breach of duty on the part of the academy.

As to the propriety of surcharging the bank for the

amounts erroneously disbursed, when a trustee makes payment to a person other than the beneficiary entitled to receive the money, he is liable to the proper beneficiary to make restitution unless the payment was authorized by a proper court. See *Old Colony Trust Co.* v. *Wood,* 321 Mass. 519, 526 (1947); *Dodd* v. *Winship,* 144 Mass. 461, 464-465 (1887); Restatement (Second) of Trusts § 226 (1959); 3 A. Scott, Trusts § 226 (3d ed. 1967). Since, as we have held, the decrees allowing the twelfth through thirty-third accounts were revoked properly, the bank thus became liable to the academy to restore to the trust corpus the payments it made to Mrs. Troland/Flynn when she was not entitled to receive them.[1] In addition to the amounts erroneously disbursed, the bank was also properly charged by the Probate Court judge with simple interest on those payments at the legal rate of six per cent per annum. See *Zak* v. *Zak,* 305 Mass. 194, 197 (1940); *Forbes* v. *Ware,* 172 Mass. 306, 308-311 (1899); *White* v. *Ditson,* 140 Mass. 351, 362-363 (1885); Restatement (Second) of Trusts § 207 (1) (1959).

The bank also challenges the probate judge's order that it pay the academy's counsel fees and costs in the amount of $15,000. General Laws c. 215, § 45, provides that "costs and expenses in the discretion of the court may be awarded to either party, to be paid by the other, or may be awarded to either or both parties to be paid out of the estate . . ., as justice and equity may require." While no taking of secret profits, self-dealing or other intentional wrongdoing on the

---

[1] The will contained no exculpatory clause protecting the bank from liability for this type of error. As noted by Professor Scott, some States have provided protection for trustees in these circumstances: "In a few states it is provided by statute that when the happening of any event, including marriage, divorce, attainment of a certain age, performance of educational requirements, death, or any other event, affects the distribution of the income or principal of trust estates, the trustees shall not be liable for mistakes of fact made prior to the actual knowledge or written notice of such fact: *Oklahoma:* Stats. Ann., tit. 60, § 175.-24 (I) (4). *Texas:* Civ. Stat. Ann., art. 7425b-25 (I) (4). *Washington:* R.C., § 30.99.090, as inserted by Laws 1959, c. 124." 3 A. Scott, Trusts § 226 at 1799 n.7 (3d ed. 1967). Massachusetts thus far has chosen not to provide trustees with this type of statutory protection.

bank's part have been alleged, the award of such costs rests in the sound judicial discretion of the judge. We agree with the Appeals Court that there is no reason to disturb his order on this matter. *Old Colony Trust Co.* v. *Third Universalist Soc'y of Cambridge,* 285 Mass. 146, 150-151 (1934).

Finally, the bank seeks review of the Appeals Court's striking from the probate judge's decree the allowance, as a charge against trust principal, of the legal fees and disbursements expended in the recovery against the widow's brother-in-law, Custance. We agree with the Appeals Court that this charge should not have been allowed. While it was clearly the responsibility of the bank as trustee to pursue the trust funds in the hands of Custance, that litigation was the result of its own negligent administration of the trust and, given its personal liability to the academy, was to some extent for its own benefit. "Even though the expense is incurred in preserving the trust estate, the trustee is not entitled to indemnity if the incurring of the expense became necessary because of his own fault. Thus if the trustee negligently permitted a third person to obtain possession of the trust property, the expenses of the litigation which resulted must be borne by the trustee personally." 3 A. Scott, Trusts § 245 at 2155 (3d ed. 1967). In the circumstances of this case it is proper for the bank to bear the expenses involved in effecting the recovery of the improperly disbursed trust assets.

It follows that the decree of the Probate Court is to be modified by striking paragraph 4 thereof. As so modified the decree is affirmed.

*So ordered.*

WILKINS, J. (dissenting in part).    General Laws c. 206, § 24, as it is involved here, is analogous to a statute of limitations. It says that, when a trustee's account has been allowed, the matters disclosed on that account are settled unless there has been "fraud or manifest error." G. L. c. 206,

§ 24, as amended by St. 1938, c. 154, § 1. The opinion of the court concludes that the implied representation that Mrs. Troland was not remarried is "fraud" within the meaning of § 24. I disagree.

The term "fraud" in § 24 must be interpreted consistently with the clear purpose of § 24 to make trustees' accounts final, as a general rule, when allowed by the Probate Court. However, the court's interpretation of "fraud" makes the exception in § 24 almost as broad as the scope of the general rule otherwise contained in that section. The trustee's misrepresentation is of a class which is typical of the kinds of errors of fact which can be reflected in an account. Almost every trust account has inherent in it a representation concerning the age, continued survival, or marital status of one or more people. The decision of the court today leaves open indefinitely for contest all such implied representations in all accounts, past and future.

The record shows a pathetic inattention to duty. The bank's inaction clearly warranted a finding of negligence. However, the court's alchemic decision today transmutes negligence into fraud when that negligence results in an implied representation of fact in a trust account. If the Legislature had intended trust accounts to be impeachable because of the negligence of the accounting trustee, it could have said so, and, if the Legislature had said so in the 1938 amendment to § 24, most informed people would have regarded the 1938 amendment as largely meaningless. See 21 Mass. L.Q. (No. 3) 16 (1936).

In construing § 24, we are not engaged in deciding whether the trustee should be liable for its action or inaction. We are concerned with what circumstances justify reopening the trustee's accounts. While a mistaken representation of a fact capable of precise knowledge made as of one's personal knowledge may be a "technical" or "constructive" fraud under tort law, even that circumstance does not entitle one to relief when the statute of limitations has run. Here, where a broad definition of "fraud" is read into § 24, the legislative purpose of finality is overridden, and the exposure to liability is made timeless.

The court's opinion pays little attention to the theory of the task before it — the construction of a statute in order to arrive at the legislative intent behind the word "fraud." I *doubt that in* 1938 *the Legislature intended* "fraud" to include the concept of "fraud" in tort actions for deceit. In *Compton* v. *State Ballot Law Comm'n,* 311 Mass. 643, 655 (1942), construing the term "fraud" in G. L. c. 53, § 22A, as appearing in St. 1938, c. 192, a 1938 statute, we held that an implied representation concerning a fact was not fraud "as that word is ordinarily understood" where the representation was mistaken but made with no intent to deceive. Indeed, in our previous decisions under G. L. c. 206, § 24, we have indicated that a narrower definition of fraud was appropriate to achieve the legislative purpose of protecting the finality of Probate Court decrees. See *O'Brien* v. *Dwight,* 363 Mass. 256, 285-286, 288-289 (1973). The purpose of the exception to finality in § 24 can be achieved by interpreting "fraud" in § 24 to mean fraud "as that word is ordinarily understood," which requires a misrepresentation with intent to deceive. The parties agree that no such circumstance is involved here.

Because the court's opinion thwarts the purpose of the 1938 amendment, I would hold that the accounts may not be reopened in these circumstances.