BARBARA M. TAYLOR, administratrix and trustee,
*vs.* WORCESTER COUNTY NATIONAL BANK, trustee.

Worcester. September 15, 1971. — December 31, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Trust,* Accounting. *Probate Court,* Accounts. *Value.*

Allowed interim accounts of a trustee were not impeachable for "fraud
or manifest error" under G. L. c. 206, § 24, as amended through St.
1963, c. 356, where the trustee in a usual and accepted manner
accounted for trust real estate at the appraised inventory value,
subject to a mortgage which was being steadily paid down, rather
than at declining actual market values. [689–691]

PETITION for revocation and reopening of accounts filed
in the Probate Court for the county of Worcester on May
13, 1965.

The petitioner also objected to the allowance of the re-
spondent's substitute second and final account filed in the
Probate Court on July 17, 1964. The petition and such
account were heard by *Rice,* J.

*Duane T. Sargisson* (*William B. Field* with him) for
the petitioner.

*Charles B. Swartwood, III,* for the respondent.

REARDON, J. The petitioner, as administratrix with the
will annexed and trustee under the will of Fred A. Lapham,
also known as Adelbert Lapham, appeals from an order of
the Probate Court dismissing a petition for revocation and
reopening of accounts, and from a decree allowing the suc-
cessor trustee's substitute second and final account. The
Worcester County National Bank also appeals from inter-
locutory decrees overruling its demurrer and plea in bar.

The will of May L. Gould was allowed on January 8, 1948.
It created a trust providing for payment of the trust income
to the decedent's husband Henry G. Gould for life, with
the remainder going, after certain bequests, equally to
Marjorie Lapham and Adelbert Lapham. The corporate

predecessor of the bank, the Worcester County Trust Company, was an executor under the will of May L. Gould.

The estate consisted principally of the Goulds' residence and of commercial property at 62–70 Front Street, both in Worcester. The commercial property was appraised and inventoried by the executors at a value of $335,000. This property was mortgaged by the executors for $200,000 in order to pay taxes and certain expenses of administration. The Worcester County Trust Company as trustee carried the Front Street property on its books at the appraised inventory value subject to the mortgage. It filed eleven accounts. In schedule "C" of its first account the difference between the inventory value and the principal balance of the mortgage was designated "equity." All but two of the eleven accounts repeated this designation (the ninth and tenth accounts did not employ the word "equity"). While the original book value of the property remained constant, the account showed an increase in the value of the equity as the mortgage was reduced.

In 1959 the respondent became successor trustee of the trust. Schedule "C" of its first account was essentially the same in form as that schedule in all the preceding accounts.

The remaindermen received copies of all accounts as they were filed. They made no objection. Marjorie Lapham lived in Worcester and Adelbert lived in New York. After a long period of poor health, Adelbert died in 1960, predeceasing the life tenant Henry Gould, who died in 1961. The will of Adelbert Lapham created a trust with a life estate in Lapham's wife. The remainder went to the petitioner as an individual. She was also named trustee thereunder. In early 1964 the respondent executed a deed of the Front Street property to the remaindermen under May Gould's will, Marjorie Lapham, and the petitioner as trustee under the will of Adelbert Lapham.

On July 17, 1964, the respondent's substitute second and final account was filed using the term "book value" in place of what was formerly designated "equity." It set the

amount of the "book value" at $189,647.40. To the allowance of this account the petitioner objected. Evidence was introduced showing that the respondent had several appraisals made of the Front Street property. One appraisal was made in July, 1959, and showed a value of $188,000; another was made in July, 1961, and it indicated an appraised value of $147,200. In four years between 1953 and 1960 the Worcester County Trust Company and the respondent applied for real estate tax abatements on the grounds that the fair market value of the property was less than the assessed value. The assessed value in 1957 was $385,000; in 1960, $298,500; and in 1962 and 1963, $225,000. There was testimony at the trial by an appraiser produced by the petitioner that based on calculations he made in 1964 the value of the Front Street property declined from a 1948 value of $324,000 to a 1964 value of $108,000. In 1967 the property was taken by eminent domain and a jury awarded $235,000 to the owners. The petitioner settled her part of that suit, however, on the basis that the value of the property was $200,000. She received half.

The petitioner is seeking a surcharge of the respondent for the loss to the Gould trust estate on the basis that the successive accounts "did not even remotely reflect the true condition of the trust estate and were a gross distortion of the trust equity in the *res.*" In addition to her objection to the allowance in the Probate Court of the respondent's substitute second and final account, the petitioner prays that the Probate Court revoke its decrees allowing ten trustee's accounts between March 4, 1952, and March 22, 1961. In effect, the petition is an attack on the continued use of the opening inventory value in accounting for the Front Street property. A trustee is held to "render upon oath at least once a year . . . a true account of the property in his hands." G. L. c. 205, § 1, cl. 7, Third. After a final decree has been rendered on any account "it shall not be impeached except for fraud or manifest error." G. L. c. 206, § 24, as amended through St. 1963, c. 356. The issue thus presented is whether the method of accounting

employed in this case was fraudulent or manifestly erroneous. The gradual decline in the value of the Front Street property produced in the accounts a distorted picture, because while the accounts showed the rise in the equity as the mortgage was reduced periodically, in fact that favorable financial picture simply did not exist.

We cannot say, however, that this method of probate bookkeeping was fraudulent or manifestly erroneous. The petitioner cites *Old Colony Trust Co.* v. *Rodd,* 356 Mass. 584, 587–588, to support her contention that the Worcester County Trust Company and its successor, the respondent, should have departed from the book value method of accounting. The effect of the *Old Colony* case is, however, limited to its facts. The judge stated that departure from "the accounting form supplied by the Probate Court" in that particular case was not erroneous. It does not necessarily follow that it was erroneous for the trustee in the present case to pursue a traditional method of accounting, i.e., stating assets at their book value. Thus, Loring, Trustee's Handbook (Farr Rev.) § 24, p. 84, fn. 5, says that the "values appearing on the account ordinarily are taken from the opening inventory which is prepared from the schedule made by appraisers . . . . Some trustees consider it good practice to adjust these values from time to time to reflect actual or market values or handling of rights, and the like. Such adjustments, of course, will produce gains or losses to principal. It is probable that the majority of trustees carry principal values at 'book' (appraisal or cost valuations) throughout the trust." See Newhall, Settlement of Estates (4th ed.) § 281.

In *Old Colony Trust Co.* v. *Mabbett,* 334 Mass. 412, 416, this court held that there was no fraud or manifest error as ground for revoking decrees already entered where bonds were purchased by a trustee and carried at book value in its accounts, although the market value of the bonds declined over a period of time. The court said that "[c]arrying the securities . . . at their book value was in accordance with the usual practice of careful and prudent trustees."

In commenting on this aspect of the case, the 1956 Ann. Surv. of Mass. Law said at pages 29–30 that "[a]lthough it might be objected that entering investments at book or inventory value in many successive interim accounts may be misleading to beneficiaries who very often are unfamiliar with the technicalities of accounting and the problems of investments, the Court recognized that this was the widespread practice among fiduciaries. Apparently, it is up to the cestuis to examine the accounts and make any objections at the hearing where they may also require the trustee to testify as to the actual value of the investments."

The petitioner argues strenuously that, where there is a concealed breach of duty, a showing of fraud is made and a trustee's account can be revoked. However, the Worcester County Trust Company and the respondent do not appear to us to have concealed anything. The trust was accounted for in a usual and accepted manner, and we cannot say that in such circumstances they have acted either fraudulently or erroneously. Cases cited by the petitioner to the contrary are not persuasive. They involve such situations as self-dealing by a trustee and failure to disclose (*Jose* v. *Lyman*, 316 Mass. 271), and a misrepresentation by a trustee as to the profitability of investments (*Brigham* v. *Morgan*, 185 Mass. 27). In short, it would appear to us that the Worcester County Trust Company and the respondent have, notwithstanding any distortion of actual value indicated by the accounts, acted in accordance with accepted probate bookkeeping practice. Nevertheless, accepted probate accounting practice (in circumstances such as here appear) may be confusing or misleading to persons not familiar with it.[1]

In recent years some corporate and other trustees have taken pains to point out in their accounts (by footnote or otherwise) that book values of trust assets have been em-

---

[1] The trustee itself in its ninth and tenth accounts wisely abandoned its use of the confusing term "equity" in describing the excess of the book value of the land over the balance due on the mortgage.

ployed, which bear no necessary relation to market values. Some trustees also have stated the aggregate market value, as of a specific date, during or following the accounting period, of securities having a readily ascertainable market or over-the-counter value. This, of course, without an appraisal, is not easily possible with respect to land or to securities and other classes of property closely held or seldom sold.

We cannot refrain from the observation that it would be appropriate for the Probate Court, after consultation with bar groups and organized bodies of corporate and other professional fiduciaries, to consider, for use in the future, some revisions of probate accounting practices, and to seek to put them into effect either by court rule or by proposing legislation. Such revisions may be possible without imposing any undue additional burden on trustees. In particular, there might be considered appropriate methods of reflecting in an account, by note or otherwise, a persistent and perceptible diminution (beyond a mere temporary fluctuation) in the value of a trust asset. Analogous or comparable fields of accounting may provide helpful precedents.

In view of the disposition of the case we do not reach the question of the propriety of the judge's actions relative to the demurrer and plea in bar.

*Order dismissing the petition affirmed.*
*Decree allowing the substitute second*
*and final account affirmed.*