JOHN J. ROCHE, guardian ad litem,[1] *vs.* BOSTON SAFE
DEPOSIT AND TRUST COMPANY.

Suffolk. January 12, 1984. — May 10, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Interlocutory appeal, Findings by judge. *Trust,* Trustee's
accounts. *Probate Court,* Accounts, Revocation of decree. *Fiduciary.*
*Fraud.*

A judgment of a Probate Court ordering the reopening of a trustee's accounts
was final for purposes of appeal. [791-792]

Allowed interim accounts of the trustee of a common trust fund were not im-
peachable for "fraud or manifest error" under G. L. c. 206, § 24, al-
though the accounts failed to disclose the aggregate amount of stock in
a publicly traded company held by the trustee and its corporate affiliates
in accounts over which they had investment discretion, and there was
a potential for marketability problems or conflicts of interest attendant
upon the size of the aggregate holdings. [792-795]

Failure by the trustee of a common trust fund to volunteer an opinion elimi-
nating the possibility of a misconstruction of an exculpatory clause in
the governing trust agreement did not constitute "fraud or manifest error"
under G. L. c. 206, § 24, to warrant reopening of previously allowed
accounts. [795-796]

CIVIL ACTION commenced in the Suffolk Division of the
Probate and Family Court Department on April 17, 1979.

The case was heard by *Fitzpatrick,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Edward B. Hanify (George Marshall Moriarty & Steven A.
Kaufman* with him) for the defendant.

*James D. St. Clair (Jeffrey B. Rudman & Richard A.
Johnston* with him) for the plaintiff.

*Catharine W. Hantzis & Leslie G. Espinoza,* Assistant At-
torneys General, for the Attorney General, amicus curiae, sub-
mitted a brief.

---

[1] Appointed in connection with a petition for the allowance of the fifteenth
account of Boston Safe Deposit and Trust Company Common Trust Fund "C".

*Frederic G. Corneel, Philip H. Suter & Roger A. Greenbaum,* for Massachusetts Bankers Association, amicus curiae, submitted a brief.

*William H. Smith & Michael F. Crotty,* of the District of Columbia, for American Bankers Association, amicus curiae, submitted a brief.

NOLAN, J. Boston Safe Deposit and Trust Company (Boston Safe), as trustee of its Common Trust Fund "C", has appealed from a probate judge's order reopening the twelfth, thirteenth, and fourteenth accounts.[2] The twelfth account was allowed on May 2, 1973, the thirteenth on July 8, 1975, and the fourteenth on September 24, 1975, to each of which guardians ad litem assented.

The plaintiff, John Roche, appointed guardian ad litem in connection with the fifteenth account, objected to the allowance of the fifteenth account and commenced this action in equity to revoke the earlier decrees because of Boston Safe's alleged fraud in failing to disclose material information. After an eleven-day trial, the judge ordered the reopening of the twelfth through fourteenth accounts "for all purposes."

Boston Safe filed a notice of appeal and Mr. Roche filed a motion to dismiss the appeal on the ground that the judge's order was interlocutory in nature. This court allowed Boston Safe's application for direct appellate review and deferred action on the motion to dismiss the appeal for consideration following oral argument.

Boston Safe makes the following claims: (1) the judge's findings of fact, which allegedly were adopted wholesale from the guardian ad litem's requests for findings, are clearly erroneous, and (2) the judge's "conclusions of law" that Boston Safe committed fraud in law (a) by failing to disclose that it held an illiquid aggregate amount of stock in a publicly traded company in accounts over which it had investment discretion and (b) by failing to disclose the proper construction of an ap-

---

[2] We note with gratitude that the Division of Public Charities of the office of the Attorney General, the American Bankers Association, and the Massachusetts Bankers Association, have filed briefs as amici curiae.

parently broad exculpatory clause are insufficient to constitute fraud for purposes of G. L. c. 206, § 24, and G. L. c. 203A, § 3. We agree with Boston Safe's second argument and conclude that, as a matter of law, the ultimate findings and rulings denominated "conclusions of law" by the judge are insufficient to constitute "fraud in law." Therefore, we need not address Boston Safe's first argument.

The controversy results from the aggregate investment by The Boston Company, Inc. (Boston Company), and its affiliates (of which Boston Safe is one), in a real estate investment trust (REIT) entitled State Mutual Investors, Inc. (SMI). SMI, established by the State Mutual Assurance Company of Worcester, Massachusetts, became listed on the New York Stock Exchange in February, 1971. In 1971, Boston Company Investment Research and Technology, Inc. (BCIRT), a group which advises Boston Company and its affiliates on investment decisions, recommended SMI as a security worthy of investment. BCIRT rated SMI as a mid-range investment, which was the lowest quality stock in which a portfolio manager of Common Trust Fund "C" could invest. At that time, SMI had been established for one year and had been publicly traded for ten months.

In early 1972, Common Trust Fund "C" bought 70,000 shares of SMI. At that time, Boston Company and its affiliates held, in the aggregate, approximately 350,000 shares of SMI in trust accounts over which it had investment discretion. By May, 1974, Boston Company and its affiliates held, in the aggregate, 588,208 shares of SMI, which constituted 21.1% of the outstanding shares.

SMI did not prove to be a fruitful investment. In the fourth quarter of 1974, the highly leveraged[3] company, experienced an earnings "squeeze" caused by increased interest rates and defaults on large loans. As a result, SMI announced that it was required to forgo its dividend. In June, 1974, which fell

---

[3] "Leverage," as applied to a REIT, is a term used to describe the situation when a REIT borrows money at a particular interest rate and lends the money to builders or developers at a higher rate of interest. A large percentage of the company's capitalization is debt as opposed to equity.

within the time period covered by the fifteenth account, Boston Safe sold 25,000 of the 70,000 shares of SMI held in the account of Common Trust Fund "C". The 45,000 shares remaining were not sold until late June of 1975. However, the total number of shares of SMI held in accounts other than Common Trust Fund "C" over which Boston Company and its affiliates had investment discretion was reduced by approximately one-half from June, 1974, to June, 1975. During this same period, the price of SMI shares fell from a high of $8.59 to a low of $1.50. The 45,000 shares remaining in Common Trust Fund "C" were sold at $1.50 per share following the close of the period covered by the fifteenth account.

Boston Safe filed the fifteenth account in the Probate Court on November 19, 1975. The Probate Court appointed Mr. Roche guardian ad litem in February, 1976. Upon his appointment, he took notice that substantial losses were incurred during the fifteenth accounting period. He also surveyed the trust instrument thoroughly and noticed an "exculpatory clause" in the miscellaneous section of the document. Section 12.1 of the document provides that "[t]he discretion of the Trustee and of the Trust Committee, when exercised in good faith, shall be binding upon all persons." Upon inquiry of Boston Safe's attorney, Mr. Roche discovered that the clause only referred to discretion concerning ministerial acts, such as selection of fiscal years, valuation dates, and the like and that it did not bar a surcharge for imprudent investments. This interpretation admittedly had not been disclosed to previous guardians ad litem, but the record does not demonstrate that these guardians were in fact misled by the clause. Having received this information, Mr. Roche proceeded to investigate the twelfth through fourteenth accounts. His investigation revealed an exceedingly high percentage of shares of SMI among accounts governed by Boston Safe and its affiliates.

This information prompted Mr. Roche not only to object to the fifteenth account, but also to commence an action pursuant to G. L. c. 206, § 24, to revoke the prior decrees which had allowed the twelfth through fourteenth accounts. In the original complaint, Mr. Roche alleged that during the period from 1972

to 1974, there existed a well-recognized rule of practice among corporate fiduciaries that a corporate trustee and its corporate affiliates should not hold in their aggregate trust accounts more than five percent of any publicly traded stock. He stated in that complaint that Boston Safe and its corporate affiliates had violated this rule by holding more than five percent of the outstanding shares of SMI, and, therefore, Boston Safe had committed "fraud in law" by failing to disclose this information in its twelfth through fourteenth accounts.

Mr. Roche later filed an amended complaint which repeated the allegations of the original complaint and also requested that the trustee's previously allowed accounts be reopened "for all purposes."[4] The basis for this contention was the exculpatory clause within the trust document. The amended complaint alleged that this clause may have misled prior guardians ad litem and beneficiaries into believing that the trustee was subject to surcharge only upon proof of "bad faith."

At trial, Mr. Roche produced expert witnesses who testified to the existence of the five percent rule of thumb. In particular, Martin Earl Lybecker, employed at the Securities and Exchange Commission, opined that the basis for the rule lay in (1) the potential marketability problems which result from the difficulty of trading a large block of securities, and (2) the potential conflicts of interest among various accounts which result when large amounts of stock are sold piecemeal at varying times. He testified that if a corporate fiduciary were to sell a large aggregate of the type held by Boston Company all at once, it would be forced to sell at a discount of the market price. Thus the trust accounts would incur a substantial loss. Conversely, he stated that, if the shares from the various accounts were sold piecemeal, inevitably the first shares traded in the market would receive a better price than the last shares traded. He noted that internal conflicts of interest among various accounts would result if the corporate fiduciary sold the shares in this

---

[4] General Laws c. 206, § 24, as amended through St. 1963, c. 356, provides: "After a final decree has been entered on any account hereunder it shall not be impeached except for fraud or manifest error."

manner. Thus, he concluded, that a large holding of seventeen percent or more of such shares would be imprudent. Sumner Kaufman, an expert in investment banking, said that, in his opinion, in June, 1974, the aggregate holdings were illiquid. He defined illiquidity as the inability to sell stock or securities at prevailing prices in a reasonable fashion. Retired Professor Roger F. Murray, Mr. Roche's rebuttal witness, reinforced these opinions.

Mr. Dana Mauch, a portfolio manager of Common Trust Fund "C" during the pertinent time period, maintained that his decision not to sell the remaining 45,000 shares of SMI during the period of the fifteenth account was based on account considerations. He explained that each account manager made individual decisions and that no internal plan or policy existed with respect to aggregate holdings within the entire trust department. He also testified that during the entire time he dealt with SMI he considered it to be liquid. His definition of liquidity was the ability to sell if necessary.

Boston Safe presented numerous expert witnesses who denied the existence of the five-percent rule. Mr. George Kidder, a fiduciary, testified that he knew of no five-percent rule in Massachusetts and that marketability of stock should not be the exclusive determinant of a prudent investment. Retired Judge Cornelius J. Moynihan, a law professor who taught trust law for many years and a witness called by Boston Safe, stated that he had never encountered the rule alleged in Mr. Roche's complaint. Five other expert witnesses testified to the same effect.

The probate judge found in favor of Mr. Roche and concluded that Boston Safe had committed "fraud in law" within the meaning of G. L. c. 206, § 24, for failure to disclose material information. The judge based her decision on two grounds: (1) the insertion of section 12.1 in the trust instrument without disclosing its meaning and (2) the failure to disclose in the previously allowed accounts the marketability problems of the SMI shares caused by large aggregate holdings. The judge found as fact that corporate trust departments follow the five-percent rule. She found that a holding in excess of five per-

cent of the outstanding shares of any publicly traded company would not be readily marketable without a risk of substantial loss, which creates a serious possibility that beneficiaries will suffer damages if liquidation becomes necessary. The judge also found that the unmarketability of the aggregate holding made it impossible for Boston Safe to discharge its duty of loyalty to the beneficiaries of every trust in which it had invested in stock of SMI. Boston Safe could have exonerated itself from any charge of fraud, as to its SMI holdings, the judge ruled, through a full disclosure of the aggregate holding to the guardians ad litem.

1. *Appealability of the revocation order.* The first matter we must address is whether the judge's ruling which reopens the twelfth through fourteenth accounts "for all purposes" is properly before us on appeal. Mr. Roche contends that the judge's order is purely interlocutory because the judgment below orders further proceedings and does not finally adjudicate the rights and liabilities of the parties. We do not agree.

Interlocutory orders, absent a report from the trial judge, G. L. c. 215, § 13, generally will not be heard by an appellate court until final judgment has been entered. *Borman* v. *Borman,* 378 Mass. 775, 779 (1979). The finality requirement eliminates piecemeal appeals which cause delay and waste judicial resources. *Vincent* v. *Plecker,* 319 Mass. 560, 563 n.1 (1946). However, we recognize that "[t]hough part of a single controversy remains undetermined, if the decree is to be executed presently, so that appeal would be futile unless the decree could be vacated by the prompt entry of an appeal in the full court, the decree is a final one." *Id.* at 564 n.2. See *Borman* v. *Borman, supra* at 779-780.

We conclude that a judgment ordering the reopening of trust accounts is a final judgment under our doctrine of present execution. Our reasoning in *Ferrick* v. *Barry,* 320 Mass. 217 (1946), is controlling. In that case we held that a judgment dissolving a partnership in an action for an accounting "although interlocutory in the sense that it did not end the litigation" was final in its effect of dissolving and liquidating the partnership. *Id.* at 219. Similarly, in the case at hand, although further

litigation may ensue, the decision below is final in its effect of vacating the prior decrees. We believe that this result comports with precedent. See *Waitt* v. *Harvey,* 312 Mass. 384, 393 (1942); *Naughton* v. *First Nat'l Bank,* 4 Mass. App. Ct. 624, 629 n.4 (1976).

2. *Findings of fact.* Boston Safe argues that certain of the judge's findings are clearly erroneous. We shall assume without deciding that the findings were warranted by the evidence. It further suggests that we must subject the judge's findings to a stricter scrutiny because she adopted Mr. Roche's requested findings verbatim. After carefully comparing the judge's findings with requests submitted by Mr. Roche, we conclude that the judge's findings display, though dimly, a "badge of personal analysis." *Cormier* v. *Carty,* 381 Mass. 234, 237 (1980), quoting *In re Las Colinas, Inc.,* 426 F.2d 1005, 1010 (1st Cir. 1970). Although many of the findings are verbatim recitations of Mr. Roche's requests, the judge omitted many portions of his requests and in many instances added and condensed sentences.

3. *Fraud in law.* General Laws c. 206, § 24, which governs the allowance and reopening of accounts, provides, in part, that a probate account once allowed "shall not be impeached except for fraud or manifest error." General Laws c. 203A, § 3, however, governs the allowance of common trust fund accounts. Section 3 provides that G. L. c. 206, § 24, governs the application for allowance of accounts but further provides that "[t]he allowance of such an account shall be conclusive as to all matters shown therein upon all persons then or thereafter interested in the funds invested in said common trust fund." Boston Safe contends that the use of the word "conclusive" in G. L. c. 203A, § 3, imposes a more stringent burden of proof upon any person who seeks to upset the allowance of a common trust fund account. The Massachusetts Bankers Association in its amicus brief urges that the word "conclusive" precludes any action for reopening of an allowed account. We need not decide this issue.

a. *Disclosure of aggregate.* The judge concluded that it was "fraud in law" for Boston Safe to fail to disclose in its

probate accountings the aggregate shares of SMI, a publicly traded stock held by Boston Safe and its affiliates in accounts over which it had investment discretion, since the amount (in all such accounts, but not in Common Trust Fund "C") exceeded five percent of the issued and outstanding shares of SMI. The judge reached this conclusion because of the potential marketability problems and potential conflicts of interest which may result when sale of the aggregate becomes necessary. We do not agree that failure to disclose this information is fraud as a matter of law. We have found no authority which supports the position taken by the judge. When reviewing a judge's ultimate findings and conclusions we must determine whether they are clearly erroneous or inconsistent with the relevant legal standards. *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976).

As we stated earlier, we assume the evidence warranted a finding that the five percent rule existed and that the aggregate holding was illiquid, i.e., could not be sold regularly on the market without substantial loss. The account prepared and submitted to the court by Boston Safe conformed to the accepted methods and the requirements at the pertinent dates. In the twelfth account the trustee listed only the book value of the SMI shares, which was all that was required at the time. See *Taylor* v. *Worcester County Nat'l Bank,* 360 Mass. 687, 690 (1971). In the thirteenth and fourteenth accounts the trustee listed both the book value and the readily ascertainable market value of the SMI shares as required by then recently adopted Rule 29A of the Probate Court (1982). The total number of SMI shares held by Common Trust Fund "C" was disclosed and the substantial decline in value of the SMI shares was apparent on the face of the thirteenth and fourteenth accounts. It was undisputed at trial that readily ascertainable market value was computed by taking the New York Stock Exchange closing price of the stock on any day within a six-month period before the end of the accounting period. See Rule 29A of the Probate Court (1982). It was also undisputed that Massachusetts practice has never required a fiduciary to attach a list of aggregate shares of stock held by affiliates of the trustee which had invest-

ment discretion. We also note that at all relevant times with respect to the contested SMI investment, Boston Safe conformed to the two express percentage limitations on investments contained in the trust instrument. These limitations precluded the trustee from investing more than ten percent of the value of the fund in securities of a single issuer and from investing in excess of five percent of the outstanding shares of a single security held in all common trust funds administered by the trustee.

Boston Safe argues that although aggregate holdings of a corporate fiduciary may have a bearing on the value of a security held in a particular account, the probate judge's ruling in effect would impose an entirely new accounting practice on corporate fiduciaries retroactively. We concur and decline to impose such a rule.

*Taylor* v. *Worcester County Nat' l Bank, supra,* presents an analogous situation though it involved real estate and not shares of stock. In *Taylor,* we held that the traditional method of accounting, i.e., stating assets at book value, even if doing so produced a distorted picture, was neither fraudulent nor manifest error. *Id.* at 690. See *Old Colony Trust Co.* v. *Mabbett,* 334 Mass. 412, 416 (1956). We also noted in *Taylor* that usual accounting methods may be misleading to beneficiaries who are often unfamiliar with accounting and problems of investment. *Id.* at 691. However, this did not compel a conclusion that the trust company had concealed anything. *Id.*

Similarly, in the case at hand the shares of SMI in the trust were accounted for in the usual and accepted manner. The aggregate holding of over five percent may have had a bearing on the value of the SMI shares but we cannot conclude that the accounting method used to determine readily ascertainable market value was fraudulent or manifestly erroneous. It is the duty of the beneficiaries and guardian ad litem to examine the accounts and to make their objections. *National Academy of Sciences* v. *Cambridge Trust Co.,* 370 Mass. 303, 310 (1976). *Burlingham* v. *Worcester,* 351 Mass. 198, 202 (1966).

The judge was primarily concerned with Boston Safe's possible violation of the prudent man rule through its investment

in a highly leveraged, unseasoned REIT such as SMI. We infer this from the judge's finding that "[t]he defendant, but [*sic*] its large aggregate holdings of SMI placed itself in the position of having too many eggs in one untested basket." The prudent man rule, which we first articulated in *Harvard College v. Amory,* 9 Pick. 446, 461 (1830), has had a distinguished history and has played an important role in the trust jurisprudence of many jurisdictions. However, the imprudence of the investment does not compel a finding of fraud. See *Reynolds v. Remick,* 333 Mass. 1, 9 (1955). Moreover, the facts of this case do not involve situations such as self-dealing by a trustee, *O'Brien* v. *Dwight,* 363 Mass. 256, 288-289 (1973), failure to disclose self-dealing, *Jose* v. *Lyman,* 316 Mass. 271, 281-282 (1944), or misrepresentation of a fact susceptible of precise knowledge, *National Academy of Sciences* v. *Cambridge Trust Co., supra* at 308, in which cases the court found fraud in the past.

b. *Exculpatory clause.* The judge concluded that there existed fraud in law on the separate and independent ground that Boston Safe failed to disclose to prior guardians ad litem that section 12.1 of the trust instrument (the exculpatory clause) only applied to ministerial matters. Boston Safe contends that fraud cannot be predicated on a trustee's failure to volunteer a legal opinion eliminating the possibility of a misconstruction of a term in a governing trust instrument. We agree.

The interpretation was never in dispute in this proceeding and Mr. Roche himself, after some legal research and investigation, determined that section 12.1 could not operate to preclude a surcharge for an imprudent investment. Additionally, we note that Mr. Roche failed to produce any evidence indicating that prior guardians ad litem had misconstrued the clause. The guardians ad litem for the disputed accounts were attorneys. Furthermore, we observe that the trust instrument required compliance with the prudent man rule of investment. There is no indication that Boston Safe was ever relieved of this responsibility. These factors lead us to conclude that there was no basis for requiring Boston Safe to submit to a legal interpretation of section 12.1.

Moreover, this Commonwealth has long adhered to the principle that such clauses do not mean that the discretionary power conferred upon a trustee is unrestricted and free from judicial scrutiny. Even broad discretionary powers are to be exercised in accordance with fiduciary standards and with reasonable regard for usual fiduciary principles. *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 351 (1965). *Digney* v. *Blanchard,* 226 Mass. 335, 337 (1917).

Accordingly, it was reversible error for the judge to conclude that failure of Boston Safe to disclose the correct legal interpretation of its exculpatory clause and the fact that its aggregate holdings exceeded five percent constituted fraud. The order of the probate judge reopening the twelfth, thirteenth, and fourteenth accounts is vacated, and the case is remanded to the Probate Court for further proceedings in light of this opinion.

*So ordered.*