FREDERICK V. McMENIMEN, THIRD *vs.* RONALD P.
PASSATEMPO, trustee,[1] & others.[2]

Suffolk. May 5, 2008. - August 15, 2008.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts, Appeal from
order of single justice. *Appeals Court,* Concurrent jurisdiction, Appeal
from order of single justice. *Practice, Civil,* Interlocutory appeal.

Discussion of this court's general superintendence power under G. L. c. 211,
§ 3. [184-185]
A single justice of this court properly denied a petition for extraordinary relief
from an order of the Superior Court pursuant to G. L. c. 211, § 3, where
the case did not present the type of exceptional circumstances that required
the exercise of this court's general superintendence power, in that the
plaintiff had adequate alternative remedies he did not pursue, namely, he
could have filed an appeal from the order as a matter of right in the Ap-
peals Court, or petitioned a single justice of the Appeals Court for review
of the order pursuant to the first paragraph of G. L. c. 231, § 118. [185-189]
This court concluded that an order of a single justice of the Appeals Court
denying a petition under the first paragraph of G. L. c. 231, § 118, was not
appealable to a panel of that court. [189-193]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on April 17, 2007.

The case was heard by *Greaney,* J.

*William P. Corbett, Jr.,* for Frederick V. McMenimem, III.

*Charles M. Waters* for Ronald P. Passatempo & others.

MARSHALL, C.J. This is an appeal from a judgment of a single
justice of the county court denying a petition for extraordinary
relief pursuant to G. L. c. 211, § 3. Because we conclude that
the case does not present the type of exceptional circumstances
that require the exercise of our general superintendence power,
we affirm the judgment of the single justice.

---

[1] Of the Samuel Pietropaolo Irrevocable Trust.

[2] The estate of Samuel Pietropaolo, also known as Sabatino Pietropaolo; and
Patricia Pietropaolo.

*Background.* The case has an unnecessarily complicated and prolonged history, which we recite in some detail because it is relevant to our disposition. The case has its roots in a civil action that was commenced in the Superior Court in July, 2004, and remains pending there. The plaintiffs at the time the action was commenced were Ronald P. Passatempo, Samuel Pietropaolo, and Patricia Pietropaolo, the trustee, settlor, and beneficiary respectively of the Samuel Pietropaolo Irrevocable Trust. Samuel Pietropaolo died during the pendency of the action and has been replaced as a plaintiff by the executor of his estate. The defendants included Frederick V. McMenimen, III, an insurance agent who, in July, 1998, sold a life insurance policy to the plaintiffs on the life of Samuel Pietropaolo. McMenimen was the nephew of Samuel Pietropaolo and his spouse, Patricia Pietropaolo. The other defendants named in the action were New England Advisory Group, LLC, for which McMenimen worked as an agent; Barry G. Armstrong, a principal of New England Advisory Group, LLC, which allegedly worked with McMenimen on the policy; the insurer, Nationwide Provident, successor to Provident Mutual Life Insurance Company[3]; 1717 Capital Management Company, a subsidiary of Nationwide Provident through which Nationwide Provident provides securities and advisory services; and Nationwide Provident's parent corporation, Nationwide Financial Services, Inc.

The plaintiffs alleged in their complaint, among other things, that McMenimen provided them with misleading information and advice and sold them a policy that was different from what he represented it to be, and which was, contrary to his representations, inadequate to meet their financial needs and stated investment objectives. They also alleged that, once the truth began to surface in or about April, 2003, McMenimen misrepresented to them the steps he was taking to rectify the situation. They asserted claims of negligence (count I), intentional and negligent misrepresentation (counts II and III), breach of fiduciary duty (count IV), intentional and negligent infliction of emotional distress (counts V and VI), violation of State and

---

[3]There is some indication in the record that Nationwide Provident may be a misnomer, and that the correct name of this defendant is Nationwide Life Insurance Company of America.

Federal securities laws (count VII), churning (count VIII), breach of contract (count IX), and violation of G. L. c. 93A (count X).

In January, 2005, McMenimen removed the action to the United States District Court for the District of Massachusetts because two of the counts against him (counts VII and VIII) involved allegations that he had violated Federal securities law. See 28 U.S.C. §§ 1441 & 1446 (2000). He then moved in the District Court to dismiss all claims against him. Following briefing on the motion, which included supplemental briefing requested by the District Court judge hearing the matter, the judge issued an order in August, 2005, which he subsequently amended in October, 2005, dismissing the Federal law claims against all defendants on the ground that they were time barred under Federal law then in effect. The judge declined to exercise supplemental jurisdiction over the remaining State law claims, see 28 U.S.C. § 1367(c)(3) (2000), and directed the entry of a final judgment remanding the action to the Superior Court.

McMenimen next filed an amended motion to dismiss in the Superior Court in December, 2005, contending that all of the remaining State law claims were barred by the third paragraph of G. L. c. 175, § 181, which he characterized as a statute of repose.[4] The case was then transferred to the Superior Court's business litigation session. The judge who heard the motion agreed with McMenimen that the two-year period described in G. L. c. 175, § 181, is a statute of repose. The judge further concluded, however, that under its express terms the statute provided repose only for insurance companies, on claims brought against a company to recover premiums paid on a policy, and did not apply to claims brought against insurance agents. The judge, in March, 2006, therefore denied McMenimen's motion to dismiss.

McMenimen then moved for reconsideration of the order denying his motion to dismiss and requested, in the alternative, that the judge exercise his discretion to report his ruling to the Appeals Court.[5] See Mass. R. Civ. P. 64 (a), as amended, 423

---

[4]The other individual defendant, Barry G. Armstrong, and the three Nationwide-affiliated corporate defendants also filed a joint motion for judgment on the pleadings asserting the same defense.

[5]He was joined in this motion by Armstrong.

Mass. 1403 (1996). That motion was denied (with one exception[6]) in January, 2007.[7] With respect to the request for a report, the judge noted that, notwithstanding the significance of the issues, he was exercising his discretion to decline to report the matter. He noted several considerations that weighed against a report: the policy had been issued approximately eight and one-half years earlier; the case itself was already two and one-half years old; the insured, Samuel Pietropaolo, had died while the action was pending; and his widow and the ultimate beneficiary of the policy, Patricia Pietropaolo, was elderly. The judge concluded that, although he might have reported his ruling in other circumstances, in these circumstances the additional time consumed by a report would "only serve to still further delay Mrs. Pietropaolo, if successful, from ever enjoying the benefits of the death benefits her late husband thought he was providing for her."

In February, 2007, McMenimen filed a further motion for reconsideration, this time seeking reconsideration of the denial of his request for a report. Again McMenimen sought to prevail on the judge to exercise his discretion to report his ruling, although the motion for reconsideration appears to have added little if anything to McMenimen's original request for a report. The judge again declined to exercise his discretion to report the matter, and again cited his concern as to the delay a report would entail and its effects on the elderly plaintiff, Patricia Pietropaolo. The judge also denied McMenimen's additional request to stay the proceedings while McMenimen sought relief from a single justice of the Appeals Court.

Undeterred, McMenimen filed a petition in the Appeals Court on February 26, 2007, pursuant to G. L. c. 231, § 118, first par. He specifically indicated in his petition that the relief he was seeking was quite limited. He sought relief only from the Superior Court judge's denial of his request to report the interlocutory

---

[6] The judge dismissed count VII of the complaint, alleging violation of G. L. c. 110A, the Massachusetts Uniform Securities Act, for reasons that are not material here.

[7] The judge at that time also allowed the motion for judgment on the pleadings for the Nationwide-affiliated defendants and denied judgment on the pleadings as to Armstrong.

ruling denying his motion to dismiss.[8] It was in a memorandum accompanying this petition that McMenimen mentioned for the first time in the litigation a contention that the interlocutory order denying his motion to dismiss (entered in the Superior Court nearly one year earlier) was immediately appealable under the doctrine of present execution, which, as we discuss below, is the centerpiece of the arguments that he now makes before us. Two days later, a single justice of the Appeals Court denied the petition without a hearing, ruling in relevant part that the Superior Court judge had neither abused his discretion nor otherwise erred in declining, in these circumstances, to report his interlocutory order denying the motion to dismiss.

McMenimen thereafter filed a notice of appeal from the single justice's order, apparently seeking to appeal from that order to a panel of the Appeals Court. A second single justice promptly struck the notice of appeal on the ground that no right to appeal existed in the circumstances, citing *Carista* v. *Berkshire Mut. Ins. Co.*, 394 Mass. 1009, 1010 (1985). McMenimen then filed two additional motions simultaneously in the Appeals Court: a motion to reconsider the denial of his petition pursuant to G. L. c. 231, § 118, first par., and a motion to vacate the order striking his notice of appeal.[9] In his motion for reconsideration he again argued that the Superior Court judge had abused his dis-

---

[8]By the time he filed his petition under G. L. c. 231, § 118, first par., the time had long since passed for McMenimen to seek relief with respect to the underlying order denying his motion to dismiss (which had been entered on the Superior Court docket on March 13, 2006). General Laws c. 231, § 118, first par., requires that a petition seeking relief be filed in the Appeals Court within thirty days of entry of the challenged trial court order. McMenimen confirmed in a subsequent filing with the single justice that his petition concerned only the order denying the request for a report, and not the order denying the motion to dismiss or the order denying reconsideration of the denial of the motion to dismiss.

[9]Shortly after filing these motions in the Appeals Court, McMenimen moved for judgment on the pleadings in the Superior Court, raising, among other issues, the defense under G. L. c. 175, § 181, that he had previously asserted in his motion to dismiss, motion for a report, and multiple motions for reconsideration. The motion for judgment on the pleadings was the functional equivalent of yet another motion to dismiss. See *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002); J.W. Smith & H.B. Zobel, Rules Practice § 12.18 (2d ed. 2006). The same judge who denied his earlier motions also rejected his motion for judgment on the pleadings. The judge summed up McMenimen's repetitive approach to motion practice by stating: "To suggest that McMeni-

cretion in declining to report the order denying the motion to dismiss. With respect to his motion to vacate the order striking his notice of appeal, he claimed that this court's adoption in 1995 of S.J.C. Rule 2:21, 421 Mass. 1303 (1995), effectively negated the holding in *Carista* v. *Berkshire Mut. Ins. Co.*, *supra* (and a long line of cases to the same effect), and rendered appealable all denials of petitions under the first paragraph of G. L. c. 231, § 118. The single justice who had denied the G. L. c. 231, § 118, petition summarily denied McMenimen's motion for reconsideration, and the single justice who had struck his notice of appeal summarily denied his motion to vacate that order.

This, however, was not the end of McMenimen's efforts to obtain appellate review. In April, 2007, he filed in the county court a petition pursuant to G. L. c. 211, § 3, attempting to invoke this court's extraordinary general superintendence power to obtain review of: the Superior Court judge's order dated March 6, 2006, denying his motion to dismiss the underlying complaint; the Superior Court judge's order dated January 25, 2007, denying his motion seeking a report of the order denying the motion to dismiss; the order of the first single justice of the Appeals Court denying the petition under G. L. c. 231, § 118, first par.; and the order of the second Appeals Court single justice striking the notice of appeal from the first single justice's order. McMenimen asked the single justice of this court either to report the G. L. c. 211, § 3, petition to the full court, direct the entry of a judgment in the Superior Court dismissing all claims against him, direct the first single justice in the Appeals Court to grant him leave to pursue an interlocutory appeal from the denial of his motion to dismiss, or direct the Appeals Court to hear his appeal from the denial of his petition under G. L. c. 231, § 118, first par.

The single justice of this court denied McMenimen's G. L. c. 211, § 3, petition without a hearing. McMenimen then filed a notice of appeal from that judgment. Because the appeal implicated at least one interlocutory ruling of the trial court, the case initially proceeded in accordance with S.J.C. Rule 2:21, as

men already has had his day in court on the question of dismissing the complaint, would be a very large understatement."

amended, 434 Mass. 1301 (2001). On consideration of Mc-
Menimen's memorandum and appendix filed under rule 2:21,
we acknowledged the potential significance of the issues he
raised and thus permitted the appeal to proceed in the regular
course. We made clear by our order, however, that we were not
making a definitive determination at that juncture that Mc-
Menimen did not have an adequate alternative remedy for
purposes of G. L. c. 211, § 3, and we specifically directed the
parties to brief that threshold procedural question as well as the
merits of the underlying issues raised by the petition. Addition-
ally, we noted that the order of the second single justice in the
Appeals Court, striking McMenimen's notice of appeal from
the first single justice's denial of his G. L. c. 231, § 118, peti-
tion, was not subject to the restrictions of rule 2:21, and therefore
we stated that McMenimen "may, if he insists, pursue that issue
in the regular course as well."

   The case is now before us on appeal from the judgment of
our single justice denying relief pursuant to G. L. c. 211, § 3.
As we shall explain, with the case in this posture, McMenimen
is not entitled to extraordinary general superintendence relief.

   *Analysis.* We begin with the elemental proposition that this
court's general superintendence power is truly extraordinary,
reserved for exceptional circumstances where a litigant demon-
strates a substantial claim of violation of his or her substantive
rights that cannot be remedied by any other available means.
We have described our power under the statute as follows:

> "General Laws c. 211, § 3, 'confers on this court the
> power of "general superintendence of all courts of inferior
> jurisdiction to correct and prevent errors and abuses therein
> if no other remedy is expressly provided." This discretion-
> ary power of review has been recognized as "extraordinary"
> and will be exercised only in "the most exceptional cir-
> cumstances." ' *Planned Parenthood League of Mass., Inc.*
> v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting
> *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978).
> Relief under G. L. c. 211, § 3, may not be sought 'merely
> as a substitute for normal appellate review.' *Francis* v.
> *District Attorney for the Plymouth Dist.*, 388 Mass. 1009,
> 1010 (1983), quoting *Soja* v. *T.P. Sampson Co.*, 373 Mass.

630, 631 (1977). A party seeking review under c. 211, § 3, must 'demonstrate both a substantial claim of violation of [his or her] substantive rights and error that cannot be remedied under the ordinary review process.' *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue, supra*, quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986). Parties seeking relief must demonstrate that they have no other legal remedy to pursue and, therefore, a petition under G. L. c. 211, § 3, is the only alternative. See *Taylor* v. *Newton Div. of the Dist. Court Dep't*, 416 Mass. 1006 (1993); *Roullett* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 1008 (1985)."

*McGuinness* v. *Commonwealth*, 420 Mass. 495, 497 (1995).

Our jurisprudence under G. L. c. 211, § 3, consistently reinforces the principle, which is grounded in the statutory language, that the extraordinary remedy of general superintendence is meant for situations where a litigant has no adequate alternative remedy. See *Cooper* v. *Regional Admin. Judge of the Dist. Court for Region V*, 447 Mass. 513, 521 (2006) ("The demonstration of the absence of adequate alternative remedies is a threshold requirement that a petitioner must satisfy before we will proceed to address the merits of a petition under G. L. c. 211, § 3. . . . The petitioner's failure to demonstrate sufficiently the absence of adequate alternative remedies, when such remedies were available, [is] fatal to her claim for relief under G. L. c. 211, § 3"); *MacDougall* v. *Commonwealth*, 447 Mass. 505, 510 (2006); *Commonwealth* v. *Jenkins*, 431 Mass. 501, 504 (2000); *Commonwealth* v. *Gaulden*, 383 Mass. 543, 550 (1981); *Soja* v. *T.P. Sampson Co.*, 373 Mass. 630, 631 (1977); *Whitmarsh* v. *Commonwealth*, 366 Mass. 212, 215 (1974), appeal dismissed, 421 U.S. 957 (1975). It is principally for this reason — the availability of adequate alternative remedies — that single justices of this court routinely deny petitions under G. L. c. 211, § 3, often without hearings, and those decisions are routinely affirmed by this court, often in rescript opinions, when they are appealed to the full court.

In his general superintendence petition before the single justice in this case, McMenimen first asked for review of the Superior Court judge's order denying his motion to dismiss based on

G. L. c. 175, § 181. Instead of directly approaching the single justice with this request in a petition under G. L. c. 211, § 3, however, he had other, more conventional, routes to take to obtain appellate review of the judge's ruling. If, as he now claims, he believed the order was subject to the doctrine of present execution,[10] he could have filed a notice of appeal and, in accordance with the doctrine, pursued an appeal of the order as a matter of right in the Appeals Court. He argues that he could not have done so because it was not "settled" that the doctrine of present execution applied to the denial of a motion to dismiss based on G. L. c. 175, § 181, where this court has never ruled on that specific point, and, he contends, until this court speaks to that precise issue such an appeal would not be "permitted by law." To the contrary, there was nothing at all preventing him from asserting his claim that the doctrine of present execution applied by filing a notice of appeal and testing the applicability of the doctrine in the trial court and, if necessary, in the appellate court, if he believed it applied to his situation. That is what others have done in similar circumstances, where the applicability of the doctrine has been at issue. See, e.g., *Brum* v. *Commonwealth*, 428 Mass. 684, 686-688 (1999); *Maddocks* v. *Ricker*, 403 Mass. 592, 596-601 (1988); *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 30-31 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988); *Roche* v. *Boston Safe Deposit & Trust Co.*, 391 Mass. 785, 791-792 (1984); *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274*, 391 Mass. 211, 213-214 (1984); *Borman* v. *Borman*, 378 Mass. 775, 778-785 (1979); *Kent* v. *Commonwealth*, 52 Mass. App. Ct. 28, 31-34 (2001), *S.C.*, 437 Mass. 312 (2002); *Mayflower Dev. Corp.* v. *Dennis*, 11 Mass. App. Ct. 630, 633-635 (1981). Contrast *Elles* v. *Zon-*

---

[10]The doctrine of present execution is a limited, judicially created exception to the well-settled principle that interlocutory orders are generally not appealable as a matter of right at the time they are made. The doctrine permits an appeal to be taken as a matter of right when the interlocutory ruling is "collateral" to the merits of the underlying action and "will interfere with rights in a way that cannot be remedied on appeal" from a final judgment in the case. *Elles* v. *Zoning Bd. of Appeals of Quincy*, 450 Mass. 671, 674 (2008), quoting *Maddocks* v. *Ricker*, 403 Mass. 592, 597-600 (1988). For a thorough collection of cases involving the doctrine, see H.J. Alperin, Summary of Basic Law § 4.11 (4th ed. 2006).

*ing Bd. of Appeals of Quincy*, 450 Mass. 671, 672-674 (2008) (addressing plaintiffs' novel claims involving doctrine of present execution pursuant to G. L. c. 211, § 3, only because plaintiffs had filed notice of appeal in trial court and attempted to pursue appeal to Appeals Court in regular course but were thwarted).[11] It is not unreasonable to expect someone in McMenimen's position either to file a timely notice of appeal from the challenged interlocutory ruling or, absent that, to wait until the conclusion of the litigation to renew his defense in an appeal from any adverse final judgment. Cf. *Littles* v. *Commissioner of Correction*, 444 Mass. 871, 875-880 (2005) (rejecting defendants' argument that interlocutory order denying their motion for summary judgment raising qualified immunity defense was not immediately appealable; discussing effect of their failure to file timely notice of appeal).

Another possible step, if McMenimen had doubt whether the doctrine of present execution applied, would have been timely to petition a single justice of the Appeals Court for review of the order denying the motion to dismiss pursuant to the first paragraph of G. L. c. 231, § 118, which he did not do. A single justice acting under G. L. c. 231, § 118, first par., could have authorized an interlocutory appeal from the underlying order to a panel of the Appeals Court. See *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.*, 380 Mass. 539, 540 (1980), and cases cited. A litigant is not entitled to relief under G. L. c. 211, § 3, where he or she had available, but did not pursue, the opportunity to seek relief under G. L. c. 231, § 118, first par. *Greco* v. *Plymouth Sav.*

---

[11]McMenimen cites *Fabre* v. *Walton*, 436 Mass. 517 (2002), *S.C.*, 441 Mass. 9 (2004), for the proposition that novel present execution issues are properly raised in a petition under G. L. c. 211, § 3. That case is distinguishable from the situation here. Among other things, the single justice in that case reserved decision on the petition and reported the matter to the full court, which obviated the need for any discussion by us of possible alternative remedies. See *Martin* v. *Commonwealth*, 451 Mass. 113, 119 (2008); *Pare* v. *Commonwealth*, 420 Mass. 216, 218 n.1 (1995); *Burke* v. *Commonwealth*, 373 Mass. 157, 158-159 (1977) ("where, as here, a single justice of this court reserves and reports an interlocutory matter to this court, we grant the litigant full appellate review"). The single justice in the case before us did not exercise his discretion to reserve and report the matter. Rather, he acted on the petition, which leaves open to us a consideration of the availability of adequate alternative remedies. See *Cooper* v. *Regional Admin. Judge of the Dist. Court for Region V*, 447 Mass. 513 (2006).

*Bank*, 423 Mass. 1019, 1019-1020 (1996). *Matthews* v. *D'Arcy*, 422 Mass. 1012 (1996). *Adams* v. *Cumberland Farms, Inc.*, 420 Mass. 807, 808 (1995).

Citing *Daveiga* v. *Boston Pub. Health Comm'n*, 449 Mass. 434, 435 n.2 (2007), McMenimen contends that he could not have petitioned for relief pursuant to G. L. c. 231, § 118, first par., because the Superior Court order denying his motion to dismiss was subject to the doctrine of present execution, was therefore immediately appealable to the Appeals Court as a matter of right, and hence was not remediable as an "interlocutory order" under § 118. This brings us back to the question why, if McMenimen believed the doctrine applied, he did not then, in accordance with the doctrine, file a notice of appeal and pursue as a matter of right an appeal from the order denying his motion to dismiss in the Appeals Court.

In short, McMenimen cannot have it both ways. He cannot simultaneously take the position, on the one hand, that he was not required to file a notice of appeal and pursue an appeal as a matter of right under the doctrine of present execution, because it was not clear that the doctrine applied, and, on the other hand, claim that a petition to a single justice of the Appeals Court, pursuant to G. L. c. 231, § 118, first par., would have been futile because the doctrine of present execution applied. He had two alternatives to seeking relief under G. L. c. 211, § 3. He could have pursued one or the other, or if he was in doubt as to which one was correct, then both. What he was not permitted to do was to pursue neither and then seek review for the first time in a petition for extraordinary relief under G. L. c. 211, § 3, as if no alternatives ever existed.

Having failed either to appeal the order denying the motion to dismiss or seek relief through G. L. c. 231, § 118, first par., McMenimen instead embarked on a circuitous and ultimately unfruitful series of attempts to put the matter before an appellate court. He first asked the judge in the Superior Court who issued the order to exercise his discretion to report the ruling, and, when that failed, he asked for reconsideration of the denial of the request for a report. Yet both his request for a report and his motion for reconsideration were silent as to the claim that he now presses before us, i.e., that he was entitled to appellate review as a matter of right under the doctrine of present execu-

tion. Not only did he not mention the doctrine of present execution by name, but he did not claim in any other words that he was entitled *as a matter of right* to pursue an immediate appeal. Rather, in each of those filings, the thrust of his argument was that the Superior Court judge should have exercised his discretion to report his ruling to the Appeals Court.

The petition that McMenimen then filed in the Appeals Court pursuant to G. L. c. 231, § 118, first par. — in February, 2007, nearly one full year after his motion to dismiss had been denied in the Superior Court — was extremely limited in its scope. McMenimen indicated in the petition that he was not seeking review of the order denying his motion to dismiss. He stated that he was only seeking review of the Superior Court judge's order denying his request for a report of the order denying his motion to dismiss. The decision whether to report an interlocutory ruling in accordance with Mass. R. Civ. P. 64 (a) is highly discretionary. The judge in this case appears to have made a legitimate discretionary decision, on the record and the limited arguments that were before him, not to report the matter, citing his reasons for not doing so; and the first single justice of the Appeals Court concluded on the limited issue that was before her that the judge had not abused his discretion or otherwise erred. McMenimen points to no case, and we are aware of none, where we have required a judge in the trial court to report an interlocutory ruling.

Finally, McMenimen argues that the second single justice in the Appeals Court erred by striking his notice of appeal from the first single justice's denial of his G. L. c. 231, § 118, first par., petition. Had the appeal been allowed to proceed, the argument apparently goes, he would then have been able to present (albeit in a very indirect fashion) the substance of his arguments in a full appeal to the Appeals Court. There was no error. We have stated on a number of occasions that there is no right of appeal from the denial of a petition under the first paragraph of § 118. See *Carista* v. *Berkshire Mut. Ins. Co.*, 394 Mass. 1009, 1010 (1985); *Cappadona* v. *Riverside 400 Function Room, Inc.*, 372 Mass. 167, 169 (1977); *Corbett* v. *Kargman*, 369 Mass. 971, 971-972 (1976); *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 181 (1975). McMenimen acknowledges this line of cases, but claims that they were "superseded" by

this court's adoption of our rule 2:21 in 1995. He claims that our rule, when read in conjunction with Rule 2:01 of the Rules of the Appeals Court (2007), which was adopted twenty years earlier, in 1975, effectively renders all decisions of Appeals Court single justices pursuant to G. L. c. 231, § 118, first par., appealable to a panel of the Appeals Court. That is not correct.

Our rule 2:21 governs appeals from decisions of single justices of this court denying petitions for relief from challenged interlocutory rulings in the trial court. These are primarily decisions on petitions filed pursuant to G. L. c. 211, § 3, as to which this court, of course, has exclusive jurisdiction. By the time rule 2:21 was adopted, this court no longer entertained petitions under the first paragraph of G. L. c. 231, § 118. As to those, the Appeals Court was, and still is, "the appropriate appellate court" for bringing a petition, because the Appeals Court has concurrent jurisdiction with this court with respect to all civil appeals from the departments of the Trial Court designated in G. L. c. 231, § 118. See G. L. c. 211A, § 10. See also *Ashford* v. *Massachusetts Bay Transp. Auth.*, 421 Mass. 563, 565-566 (1995). Petitions under G. L. c. 231, § 118, are thus within the province of the Appeals Court. Rule 2:21 makes no mention of the Appeals Court and was not intended to have any effect on Appeals Court practice under G. L. c. 231, § 118.

More importantly, rule 2:21 was not intended to change the substantive law on what types of decisions could or could not be appealed in either this court or the Appeals Court. Rather than creating a new vehicle for appeal, the rule was adopted in recognition of the fact that there already were a large number of appeals being taken to this court under existing law from decisions of single justices under G. L. c. 211, § 3.[12] The rule was intended to aid this court in managing the appeals that already existed. See 1 Appellate Practice in Massachusetts § 1.5.3, at

[12]While some earlier decisions of this court suggested that a single justice's denial of a G. L. c. 211, § 3, petition challenging an interlocutory order in the trial court was not appealable as a matter of right, by the time S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001), was adopted it was fairly well established that judgments of single justices in G. L. c. 211, § 3, actions were final and appealable. See, e.g., cases cited in Henn, Civil Interlocutory Appellate Review Under G. L. M. c. 231, § 118 and G. L. M. c. 211, § 3, 81 Mass. L. Rev. 24, 38 (1996). Although the first sentence of rule 2:21 states that "the party denied relief may appeal the single justice's ruling to the full court,"

1-11 (Mass. Cont. Legal Educ. 2d ed. 2000 & Supp. 2008) ("Because of the large number of appeals to the full court from single justice denials of petitions pursuant to G. L. c. 211, § 3, the court adopted a special rule for processing these appeals, S.J.C. Rule 2:21. . . . The rule is designed to bring to a speedy conclusion those appeals that are doomed to fail because of the existence of adequate alternative avenues of relief . . .").

Further, Rule 2:01 of the Rules of the Appeals Court states that certain single justice decisions in that court "may be reviewed by a panel of other justices of [the] court in the same manner and to the same extent that the determination of a like matter by a single justice of the Supreme Judicial Court may be reviewed by the full court of the Supreme Judicial Court." It can hardly be said that petitions in the Appeals Court under G. L. c. 231, § 118, first par., and petitions in this court under G. L. c. 211, § 3, are "like matter[s]." The extraordinary power of general superintendence pursuant to G. L. c. 211, § 3, resides exclusively in this court. It applies in both civil and criminal cases, and to "all courts of inferior jurisdiction." The relief that can be granted is vast. An action seeking relief under G. L. c. 211, § 3, is regarded as a new and separate civil action in the county court. Though there often is an interlocutory ruling from a trial court at issue, that is not necessarily the case. Significantly, the G. L. c. 211, § 3, action culminates in a final "judgment" in the county court, and there is a statute that renders that judgment appealable as a matter of right. G. L. c. 231, § 114 ("A party aggrieved by a final judgment of a single justice of [this] court may appeal therefrom to the full court . . ."). A petition pursuant to G. L. c. 231, § 118, first par., by contrast, is substantially more limited. It applies in civil cases only, and the statute requires that there be an interlocutory order that is being challenged. The statute confers jurisdiction only with respect to rulings of certain designated departments of the Trial Court. The relief that can be granted is limited by the terms of the statute to what a single justice would be authorized to grant pending an appeal under G. L. c. 231, § 117. And significantly,

that phrase, correctly understood in light of the history and purpose of the rule, does not create a new right of appeal but recognizes the existing right and defines the types of appeals that the rule governs.

the proceeding before the single justice culminates in an order, not a final judgment. The denial of a petition under the first paragraph seeking relief from an interlocutory order of the trial court is itself interlocutory.

The cases cited by McMenimen to bolster his claim that an order of an Appeals Court single justice denying relief under G. L. c. 231, § 118, first par., is appealable, are distinguishable. It suffices to say that none of those cases involved an interlocutory order of the trial court or an order of an appellate court single justice denying relief pursuant to G. L. c. 231, § 118, first par. Those cases involved other types of single justice orders that were, by operation of the Rules of Appellate Procedure and other court rules, appealable to the panel. See *Kraytsberg* v. *Kraytsberg*, 441 Mass. 1020, 1021 (2004) (order of Appeals Court single justice pursuant to Mass. R. A. P. 15 [c], 365 Mass. 859 [1974], in appeal then pending before Appeals Court, regarding access to certain internal court documents, was reviewable by panel); *Hunt* v. *Appeals Court*, 441 Mass. 1011, 1012 (2004) (litigant aggrieved by order of Appeals Court single justice concerning reduction of filing fee for appeal was reviewable by panel); *Jaynes* v. *Commonwealth*, 436 Mass. 1010, 1011 (2002) (impoundment ruling made by Appeals Court single justice in course of appeal then pending before Appeals Court was reviewable by panel); *Kordis* v. *Appeals Court*, 434 Mass. 662, 667 (2001) (certain orders of Appeals Court single justice pursuant to rule 15 [c], in appeal then pending before Appeals Court, were reviewable by panel in accordance with last sentence of rule 15 [c]); *Maza* v. *Commonwealth*, 423 Mass. 1006 (1996) (order of Appeals Court single justice, pursuant to Mass. R. A. P. 10, 378 Mass. 937 (1979), denying leave to docket appeal late was reviewable by panel); *Murphy's Case*, 53 Mass. App. Ct. 708, 711 n.2 (2002) (party aggrieved by Appeals Court single justice's decision pursuant to rule then in effect governing workers' compensation appeals may appeal to panel, as expressly provided in rule).

In sum, the fact that a judgment of a single justice of this court on a matter under G. L. c. 211, § 3, is appealable to the full court, and the fact that certain other orders made by single justices of the Appeals Court are appealable to a panel of that court in accordance with the rules of appellate procedure and

other court rules, does not compel the conclusion that an order of a single justice of the Appeals Court denying a petition under G. L. c. 231, § 118, first par., is likewise appealable. Through G. L. c. 231, § 118, first par., the Legislature has authorized only a very limited form of interlocutory review, i.e., review by a single justice of the appellate court. Recognizing a right to appeal to a panel from a single justice's decision in these circumstances would effectively render every interlocutory order of the trial court reviewable by an appellate panel, and would thereby undercut in a significant way the principle that piecemeal appellate review is strongly disfavored.

*Conclusion.* For these reasons, we conclude that this is not the type of extraordinary case where general superintendence relief would be appropriate. The judgment of the single justice denying relief is therefore affirmed.[13]

*So ordered.*

---

[13]In concluding, as we do, that relief under G. L. c. 211, § 3, is not appropriate, we express no view on the substantive merits of McMenimen's underlying claims. Nothing we say would preclude him from raising his claims concerning the applicability of G. L. c. 175, § 181, in an appeal from any judgment that might be rendered against him in the trial court. See *Littles* v. *Commissioner of Correction*, 444 Mass. 871, 880 (2005) (holding that defendants had failed to pursue timely interlocutory appeal on qualified immunity issue, and dismissing belated attempt to obtain interlocutory review; "[w]hile we dismiss this appeal because the defendants did not timely appeal from the first judge's decision on their motion, we do not address the merits of the defendants' qualified immunity claims, which they remain free to raise on any appeal").