Billings, Thomas P., J.
This is the last chapter in a lengthy litigation. The case was filed in the Middlesex *500 Superior Court on July 1,2004; removed by defendant McMenimen to federal court; remanded nine months later following dismissal of the federal causes of action; transferred to the Business Litigation Session on January 18, 2006 where it was tried twice (2010 and 2012) against different defendants. Along the way there were multiple detours to the appellate courts; mostly, on groundless petitions by McMenimen for review of interlocutory orders of this Court.
In their 2004 complaint, the plaintiffs alleged that they were persuaded by Frederick McMenimen, an agent for Provident Mutual Life Insurance Co. and its broker-dealer affiliate 1717 Capital Management Company,[4] to give up $500,000 in insurance on the life of Sam Pietropaolo, Sr. in order to purchase what McMenimen told them was a $500,000 policy with Provident Mutual, but which they later discovered was only a $200,000 policy. They have proven this to the satisfaction of two juries and a judge, obtaining judgments against McMenimen in 2010 for fraud and under Chapter 93A, and following a jury trial in 2012,[5] against Nationwide under Chapter 93A. The second jury awarded $440,000 in compensatory damages against Nationwide, partly on account of its vicarious liability for McMenimen’s actions and partly on account of the failure of the home office to detect and prevent McMenimen’s fraud.[6] The jury also awarded multiple damages against Nationwide in both respects, 240% on account of McMenimen’s conduct and 250% on account of the home office.
Nationwide brought post-trial motions, seeking judgment n.o.v., a new trial, and/or remittitur. Although the verdict as to liability was supported by the evidence, I agreed with Nationwide that the jury’s damage assessment was problematic in several respects, and ordered a remittitur to single damages of $300,000 (the difference between the coverage represented and that received) and a punitive multiplier of 240% (the jury’s evaluation of McMenimen’s culpability, there being little evidence that Nationwide’s failure to detect and correct his misdeeds was willful or knowing). (Paper #275) The plaintiffs accepted the remittitur in lieu of a new trial on damages. Damages, before prejudgment interest, are therefore $720,000.
Before me is the plaintiffs’ motion for attorneys fees and costs against Nationwide. The initial claim, dated November 23, 2012, was for $839,622.00 in fees and $83,829.07 in costs, which plaintiffs’ counsel have divided among four “chapters” in the litigation. (The plaintiffs’ submission does not include fees for appellate work; see York Mgmt. v. Castro, 406 Mass. 17, 19-20 (1989)). To this I have added the amount of $35,159 claimed in a supplemental fee request dated January 3, 2013 (Paper #282) for post-trial motion practice, up to and including preparation of the first fee request and the hearing thereon. The plaintiffs’ total fee claim is as follows.[7]
Ch. Activities Hours Fees Av. Rate
1 Discovery/ 903.1 Motion Practice (12/04-8/07) $202,712.50 $224
2 Expert review & disclosure 552.0 /MSJ/tiial prep (8/07-6/09) $131,706.00 $239
3 Trial I and post-Trial I issues (6/09-11/10) 710.9 $190,563.50 $268
4 Post-SJC remand/ additional discovery/ Trial II (1/12-11/12) 957.8 $314,640.00 $329
Supplemental fee request 104.2 6 35.159.00 $33Z
TOTAL 3,228 $874,781.00 $271
DISCUSSION
A. Attorneys Fees
According to familiar principles, a judge considering a request for award of statutory fees
“should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.”
Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 430 (2005), quoting Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), and Berman v. Linnane, 434 Mass. 301, 303 (2001).
Mathematical precision is rarely possible in such matters; rather, a statutory fee award is committed to the sound discretion of the trial judge. That discretion, however, is not unbounded.
As one general limitation upon discretion, [one must] keep in mind that “when a parly other than the one who hired the lawyer is required to pay the fee, conservative criteria are in order.” As another, we remember that success does not justify extravagance. Reasonable fees and costs for a prevailing party do not include compensation for unnecessary or ineffectual activily. The fees seeker must show the utility of the services.
City Rentals, LLC v. BBC Co., 79 Mass.App.Ct. 559, 567 (2011) (citations omitted).
Nationwide has asserted a half-dozen arguments against the award sought in this case. The first two of these fail to clear the starting gate for failure to support factual allegations by affidavit, record citation, or judicially noticeable facts.[8]
The third and fourth arguments are that the plaintiffs should not have asserted claims against Barry Armstrong (the owner of the insurance brokerage at which McMenimen was an agent when he sold the policy in question) that Judge Hinkle rejected (under Chapter 93A) and the SJC ultimately held were time-barred (as to negligence), and should not have pleaded the two federal securities counts that the United States District Court dismissed as time-barred.
*501 I agree that the claim against Armstrong was thin. The limitations issue (whether tolling the statute of limitations against one defendant on account of his fiduciary status extends to another, non-fiduciary defendant) had not been “squarely addressed” in Massachusetts, but the SJC looked to “the weight of authority in other jurisdictions” to hold that the statute was not tolled as to Armstrong, and the claims against him were therefore untimely. Passatempo v. McMenimen, 461 Mass. 279 295 (2012). While the plaintiffs cannot be faulted for their lack of success in litigating an unsettled issue of Massachusetts law, this litigation did nothing to advance the claim against Nationwide. Although it is impossible to assess with any precision the marginal cost of the Armstrong claims, some deduction is appropriate, as discussed below.
The federal securities claims similarly added cost but no value, though here the cost is more readily calculable. A complaint is not a law school final exam, on which points are deducted for “missing” potential theories of recovery. This case followed a familiar and unfortunate path, in which a complaint is filed in superior court asserting numerous state-law claims and one or more iffy federal claims pleaded as apparent afterthought,[9] the defendant removes the case to federal court, the federal judge dismisses the federal claims and (inevitably) declines to exercise pendent jurisdiction over the state claim(s), and the case arrives back in our Court, many months and many thousands of dollars in litigation costs later, with nothing productive having been achieved in the meantime.
In this case, McMenimen did the removal (achieving a partial victory thereby), but the plaintiffs set it up. Moreover, although the unsuccessful federal claims may have arisen from the same “single chain of events” and “common core of facts” as the Chapter 93A claim, see Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 177 (1999), they were baseless, and the marginal cost of their inclusion was substantial. I agree with Nationwide that fees for this chapter ought to be denied in their entirety. [10] This means a deduction of the fees incurred from the date of removal (January 26, 2005) to the date of remand (August 18, 2005). The amount of the deduction is $53,347.50.
Next, Nationwide observes that the plaintiffs sought, via discovery and independent research, evidence concerning regulatory actions against Provident Mutual. ‘This regulatory history was plainly inadmissible,” Nationwide argues, yet the discovery proceeded.[11] This was mostly before my involvement in the case, and -I do not see from the docket that the discovery issue was litigated. I did allow Nationwide’s motion in limine to exclude evidence at trial of regulatory investigations and consent agreements not directly involving the plaintiffs, on the ground that its potential for prejudice and confusion outweighed its probative value.
That is not to say, however, that another judge might not have made a different call, or that it was all a waste of time, or that the prerequisite for discovery— that the information sought be “reasonably calculated to lead to the discovery of admissible evidence” (Mass.R.Civ.P. 26(b)(i))—was not met. Few capable attorneys representing these plaintiffs, on hearing that Provident Mutual had been in hot water before for selling unsuitable policies, would have passed up the opportunity presented. Unsuitability, coupled with fraud, lay at the heart of the claims against Nationwide, and I do not fault the effort in this case to learn more about Provident Mutual’s experience with the subject.[12]
Finally, Nationwide objects to the plaintiffs’ having filed an emergency motion[13] to reconsider the Court’s action on Nationwide’s post-trial motions. This was, however, another good faith, albeit unsuccessful, effort by counsel on behalf of client. Both sides’ approaches to the case have been thorough, capable, and, at times, creative. Neither has prevailed on every motion. You can’t win if you don’t play, and both the plaintiffs and Nationwide have played energetically but within the rules.[14]
A substantial issue posed by the fee request concerns the fact that for most of the period in which the fees were incurred, Nationwide was not (at least formally) a party to the case; the work expended and fees incurred in its absence were in pursuit of recovery against other defendants. Nationwide departed the case on January 25, 2007, with the Court’s allowance of its motion to dismiss, and re-entered it on January 12, 2012, when the SJC reversed that decision. In the intervening five years came 162 docket entries (out of 238 in total), eight cases entered on the dockets of the Appeals Court and the SJC resulting in three published SJC decisions, and a lengthy trial in 2010 with all the preparation and post-trial work that entails.
The fees claimed for the periods while Nationwide was a parfy are as follows:
Beginning until Nationwide $ 69,150.00 dismissed (1/12/07)
Nationwide reinstatement $314,640.00 (1/12/12-11/23/12)
Per supplemental fee request $ 35.159.00
TOTAL $418,949.00
In other words: close to half of the total fees claimed were for the period while Nationwide was not, at least formally, a party. (I am informed that Nationwide, although dismissed from the case, still sent counsel to the depositions, some of which were of its own employees and others not.)
I know of no reported case on like facts. According to well-settled principles, “where a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary.” Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 177 (1999) (citation *502 omitted). The same is true where common-law claims are pleaded first and a Chapter 93A claim, on the same facts, is added by amendment. Clamp-All Corp. u. Foresta, 53 Mass.App.Ct. 795,813 (2002). The reasoning is that where “the common-law claims and the claims under G.L.c. 93A [are] largely predicated on identical facts . . . the legal effort to establish the two classes of claims [is] virtually the same.” Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 430 (2005).
That Nationwide enjoyed non-party status for five years does not, by itself, mean that all of the work during this period was without value to the plaintiffs in securing a judgment under Chapter 93A against Nationwide. For example, discovery in the six months right after Nationwide’s dismissal was of substantial utility in the Nationwide claim, as further discussed below. It can hardly be gainsaid, however, that the dismissal and later resuscitation of the claim against Nationwide increased substantially the overall cost of the plaintiffs’ preparation and trial of the entirety of their claims. Two trials of identical or overlapping claims are inevitably more costly than one.
The issue of who should pay the added cost cannot be resolved by resort to the equities. All parties concerned here acted reasonably and in accordance with their obligations in our adversary system: Nationwide, in advancing the argument for dismissal;[15] the motion judge, in ruling on it; the plaintiffs, in opposing it and in appealing the adverse decision; and the SJC, in declaring with finality, on a novel and arguably close issue, “what the law is.”[16] If anything, the case stands as an object lesson in the occasional unintended costs of “the appellate courts’ ‘traditional abhorrence of piecemeal appellate review.’ ” Long v. Wickett, 50 Mass.App.Ct. 380, 387 (2000) (citation omitted). The price of forbearance, in this case, was piecemeal trials, at very substantial cost to the parties. Thanks to Mr. McMenimen, there were piecemeal appeals anyway.[17]
Nor are the Linthicum factors—"the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases"—directly informative on the issue. I do note that these considerations generally favor the plaintiffs: their claim against Nationwide lay at the core of Chapter 93A’s remedial purposes; substantial time and labor was required—twice—to prepare and try the case; the experience, reputation, and ability of the two attorneys who tried the case and those who participated earlier in its preparation are top-drawer; the result obtained was excellent and, once interest is applied,[18] substantially exceeds the claimed fees; the hourly rates charged are undeniably competitive in the Boston legal market; and no one has suggested that the fees requested are out of line with awards in similar cases.
There remains, however, the fundamental question of how much of the fees claimed actually contributed to the result obtained against Nationwide. Generally speaking, fees incurred in litigation against a codefendant, or otherwise on efforts (e.g., factually unrelated claims) that did not contribute materially to the plaintiffs success on the statutory claim, are not compensable. City Rentals, 79 Mass.App.Ct. at 568-69.
In this case, at least some of the fees incurred during the five-year period during which Nationwide was a bystander contributed directly to the Chapter 93A judgment against it. The spring and summer of 2007, in particular, was a period of considerable activity, in which plaintiffs’ counsel took the depositions of McMenimen, Armstrong, and Nationwide (whose Rule 30(b)(6) witness, James Dubois, testified at length in the plaintiffs’ case in the 2012 trial). They also defended multiple days of depositions of their clients, transcripts of which were used by the defense in the 2012 trial. I therefore find that services rendered in the period between Nationwide’s dismissal on January 25, 2007 and August 31, 2007—by which date the discovery activity had largely ceased—to be com-pensable, notwithstanding Nationwide’s non-party status, because the work contributed substantially to the 2012 trial and its favorable result.[19]
Thereafter, however, the focus shifted to preparation for trial against McMenimen and Armstrong, the trial itself, and post-trial litigation. None of this involved Nationwide directly, and little if any of it bore on or contributed directly to the 2012 trial (which was preceded by its own period of fevered preparation, including additional discovery, in January-September 2012). Although the two trials had substantial commonality of factual and legal issues—McMenimen’s conduct occupying center stage in each—Nationwide did not participate in the 2010 trial and did not direct or control anyone who did, meaning that the 2010 outcome was neither claim- nor issue-preclusive against Nationwide in the 2012 trial. See Amovitz v. Fafard, 78 Mass.App.Ct. 1, 7 & n.12 (2010), citing Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994).
A bad outcome in 2010 would, however, have been issue-preclusive against the defendants; and therein lies the causal relationship between the plaintiffs’ work before and during the first trial and their ultimate success on the Chapter 93A claim against Nationwide. Quite simply, the plaintiffs had to win against McMenimen to stay in the game against Nationwide. In large (and the strongest) part, the claims were identical: that McM-enimen misled the plaintiffs into accepting a $200,000 policy when they thought they were getting a $500,000 policy. Against Nationwide, they needed to prove additionally that Nationwide was vicariously liable for its agent’s actions, and/or that its home office behaved unfairly and/or deceptively in writing the policy.
*503 Losing against McMenimen at the 2010 trial therefore would, for all practical purposes, have cost the plaintiffs their claim against Nationwide. See Martin v. Ring, 401 Mass. 59,61 (1987); Mancusov.Kinchla, 60Mass.App.Ct. 558,565 (2004) (“[njeither Federal nor Massachusetts law requires precise identity or mutuality of parties for application of issue preclusion, at least when it is raised defensively against complainants who had a full and fair opportunity to litigate all of their grievances arising out of the same transaction at issue in both cases”). The effort expended in preparing and trying the case in 2010 thus contributed to the judgment against Nationwide, by enabling the claim to remain viable.
Judge Hinkle, in her consideration of the plaintiffs’ request for fees against McMenimen following the 2010 trial, ruled that “the legal theories plaintiffs pursued against other defendants are largely distinct from the essential claims asserted against McMenimen,” and that a reduction of 25% was therefore appropriate. In the 2012 trial, half the case against Nationwide was based on McMenimen’s conduct and Nationwide’s vicarious liability therefore. The claims against Armstrong were a good deal weaker as to vicarious liability, were unrelated to the claim against Nationwide, and were ultimately unsuccessful.
Also, much of the work while McMenimen was in the case was generated by McMenimen’s aggressive, wasteful, and often frivolous defense tactics, partly in the appellate courts but also in this Court. Although “[a] defendant ‘cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response,’ ” Nationwide should not be chargeable with the costs of McMenimen’s “Pyrrhic defense.” City Rentals, 79 Mass.App.Ct. at 568 & n.14 (citation omitted).
Taking both of these factors into account, I make the same 25% deduction as did Judge Hinkle, albeit for somewhat different reasons. The award of fees in this case is therefore $703,524.87, figured as follows: Nationwide’s liability for fees incurred through the 2010 trial and post-trial motions ($353,725.87) shall be joint and several with Frederick McMenimen.
B. Expenses
The plaintiffs additionally seek reimbursement of $86,422.57 ($83,829.07 in the original motion and $2,593.50 in the supplemental motion, for deposition transcript). Of these, the plaintiffs sought $52,203.96 following the 2010 trial. Judge Hinkle, after deducting $5,225 for office overhead items (“copying, faxing, travel, meals, ‘redwells,’ document services, courier services and parking”) and $4,826 for the plaintiffs’ expert’s (Robert Cohen’s) “travel time, review of unspecified depositions [and] express mail,” awarded $42,151.1 agree with and adopt Judge Hinkle’s deductions, and extend her approach to the additional expenses incurred from then until the present. I have therefore made the same deductions as Judge Hinkle did, plus an additional $6,393.40 ($892.11 in “Messenger Fees,” $202.21 for “Travel,” and $5,299.08 for “In-house Photocopy) from Sheehan, Bass, Phinney & Green’s post-2010 bills and another $2,000.50 (for travel time, parking, cab fare, and ’’Flight Change for September 2012”) from Cohen’s latest bill. Expenses are therefore awarded in the amount of $67,977.67, of which Nationwide’s liability for $42,151.00 is joint and several with McMenimen.
There remains only to enter a final judgment reflecting the results of the juiy and jury-waived proceedings in 2010 before Judge Hinkle, her award of fees and costs against McMenimen, the SJC’s rescript, the juiy’s verdict in the 2012 trial, my modification of it, and my award of fees and costs against Nationwide.
ORDER FOR FINAL JUDGMENT
Final judgment is to enter as follows.
1. On the plaintiffs’ complaint against defendant Barry Armstrong, judgment for the defendant, the plaintiffs to take nothing.
2. On the complaint against defendants Nationwide Life Insurance Company of America and Nationwide
[[Image here]]
*504 Securities, LLC, as successors to Provident Mutual Life Insurance Company and 1717 Capital Management Company, (a) damages in the amount of $720,000.00, Nationwide’s liability to be joint and several with Frederick V. McMenimen, HI, with prejudgment interest to run from July 1, 2004 on the amount of $300,000;[20] (b) attorneys fees in the amount of $703,524.87, of which Nationwide’s liability for $353,725.87 is joint and several with Frederick V. McMenimen, III, interest to run from the date of judgment;[21] and(c) costs in the amount of $67,977.67, ofwhich Nationwide’s liability for $42,151.00 is joint and several with McMenimen, with prejudgment interest to run from July 1, 2004 on the whole.[22]
3. The amended final judgment docketed on October 19, 2010 (Paper #213) and affirmed by the Supreme Judicial Court shall remain in full force and effect as regards defendant Frederick V. McMenimen, III.

Provident Mutual and 1717 Capital Management were subsequently taken over by Nationwide Life Insurance Company of America and Nationwide Securities, LLC respectively. For simplicity’s sake, the Provident Mutual and Nationwide entities will be referred to hereinafter collectively as “Nationwide.”

I was the trial judge in 2012; Judge Hinkle presided over the 2010 trial.

rhese two awards overlapped; $440,000 was the amount the jury awarded as total, non-duplicative damages.

In addition to fees of $35,159.00, the supplemental request seeks costs of $2,593.50.

These are the assertions (1) that McMenimen won $2.3 million in the New Hampshire State Lottery, but the plaintiffs failed to seek an attachment until 2008, thus forgoing an opportunity to satisfy their claim in full when they obtained a $900,000 judgment against McMenimen; and (2) that before the first (2009) trial the insurer for Barry Armstrong—who was found liable in negligence for $30,000 by the 2009 jury, was found not liable by Judge Hinkle on the Chapter 93A claim, and who later prevailed on appeal as to both negligence and Chapter 93A—offered over $400,000 in settlement but was refused. Each assertion, even if taken at face value, involves an exercise of judgment by counsel not unreasonable on its face; additionally, the only “facts” put forward in support are statements in a brief. See Superior Court Rule 9A(a)(4).

As the SJC has remarked of this case, “(t]he plaintiffs’ complaint included ten State and Federal claims. By un-appealed court order or by stipulation of the parties, these claims were winnowed to (1) fraud; (2) negligence and negligent misrepresentation; and (3) violations of G.L.c. 93A.” Passatempo v. McMenimen, 461 Mass. 279, 285 (2012).

From the federal court docket, it appears that all that was accomplished in the federal court was the defendants’ filing of their answers or, in McMenimen’s case, a motion to dismiss, and the litigation and allowance of the latter. Cross motions for preliminary injunction by the plaintiffs and Mc-Menimen and the plaintiffs’ contested motion to substitute Sam Pietropaolo’s estate as a party after his death were denied without prejudice to renewal in state court.

 Nationwide has not, however, made any effort to quantify the fees expended on this issue.

Prior experience means prior knowledge. Nationwide’s regulatoiy histoiy might have been relevant at least to the issue of multiple damages. Had the transaction in this case—swapping $500,000 in coverage for $200,000 in coverage, with only modest premium savings to the elderly insured—been less starkly unsuitable, it might even have made the difference between liability and none. Research into such matters can also have collateral benefits, such as identifying and learning from attorneys who have handled similar claims.

The reason for the emergency designation was the approach of a deadline I had set for the plaintiffs to elect between remittitur and a new trial.

These parties’ conduct provide a welcome contrast with the obstructionist and dilatory tactics of Mr. McMenimen and his counsel, of which even the bare paper trail paints a vivid picture. See, to get a flavor, Passatempo v. McMenimen, 458 Mass. 1007 (2010); McMenimen v. Passatempo, 452 Mass. 178, 178-84 & n.9, 188-89 (2008); and Memorandum and Order on Motion for Reconsideration of Request for Report, 2/23/07 (Paper #82; van Gestel, J.) (noting that “McMenimen is a key defendant in the case and yet, despite its age [two years, seven months and twenty-two days at that point], he has, to this date, avoided filing an answer to the complaint”).

In dismissing Nationwide, the motion judge accepted its argument that the rescission remedy in G.L.c. 175, §181 for “misrepresentation or misleading representation in respect to the terms, benefits or privileges of any policy of insurance” was, as to the insurer, an exclusive remedy, and that the claim against Nationwide was time-barred under the statute’s two-year statute of repose. The SJC, acknowledging that “[njothing in the statute speaks directly to” the issue of exclusivity, was persuaded by the statute’s legislative history that common-law remedies and, ultimately, the statutory remedy of Chapter 93A were available.

Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803).

Hindsight being 20/20, one might be tempted to suggest that either the plaintiffs or Nationwide ought to have brought a motion under Rule 54(b) for separate and final judgment. Such motions are not disfavored where “[t]here [are] no other claims against [the dismissed party, and no] substantial overlap between the issues to be decided on appeal and those remaining for trial.” Datboli v. Hale Hospital, 400 Mass. 175, 176-77 (1987); see Long at 401. This case would not have fit perfectly into this paradigm, however—ail defendants moved for dismissal under section 181, and its application to all defendants was finally determined in the SJC’s 2012 decision; clearly, there was substantial overlap. A Rule 54(b) motion in these circumstances would not likely have succeeded, in this or in the appellate courts. Indeed, McMenimen requested that Judge van Gestel report for appellate review his decision that section 181 applied only to an insurer, not to its agent, and was turned down. (Paper #82.)

This seems a fair comparison, inasmuch as no prejudgment interest will be awarded on the attorneys fee award. Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272-73 (1985). The fee agreement between plaintiffs and their attorneys began as a pay-as-you-go arrangement at reduced hourly rates and, in early 2012, was converted to a contingent fee agreement. Whether the costs of litigation have been borne by the client or the law firm, the opportunity cost is real.

This and other similar characterizations are necessarily approximate, given the available information and the limitations on the exercise generally.

See McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 716 (1990).

See Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272-73 (1985).

, See Osborne v. Biota, 404 Mass. 112, 116 (1989).